## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JANE DOE, M.D.**,<br><br>Plaintiff,<br><br>v.<br><br>**STEVEN L. LIEBERMAN**, in his official capacity as Acting Principal Under Secretary for Health, Department of Veterans Affairs, Veterans Health Administration,<br><br>**DISCIPLINARY APPEALS BOARD**, Department of Veterans Affairs, Veterans Health Administration, and<br><br>**EASTERN COLORADO HEALTHCARE SYSTEM**, Department of Veterans Affairs, Veterans Health Administration,<br><br>Defendants. | Case No. 20-cv-2148 |

## MEMORANDUM OPINION

Former Department of Veterans Affairs anesthesiologist Jane Doe challenges the decision

of a Department of Veterans Affairs ("VA") disciplinary board, following an evidentiary

hearing, to uphold her removal from federal service based on findings of unprofessional

conduct.[1]  Dr. Doe assigns various procedural and evidentiary errors to the hearing.  She also

contends that the board's reasoning was flawed and its decision was not supported by sufficient

evidence.  The Court rejects all of Doe's hearing objections save one—that the board did not

adequately explain its exclusion of certain evidence that Doe sought to offer in her defense.  The

---

[1]  Doe sought and was granted permission to proceed under a pseudonym by the Chief Judge of this Court when she filed this case in August 2020.  See ECF No. 4.  While this Court harbors some concerns about allowing Doe to remain in that status, the government has not objected.

Court will therefore remand the case to enable the board to either explain the exclusion or reconsider its decision in light of any of the excluded evidence it may now choose to accept with the benefit of this opinion.  The Court will reserve judgment on the sufficiency of the evidence supporting Doe's removal pending remand.

**I.     Background**

In March 2015, the VA hired Dr. Doe as a staff anesthesiologist and critical care physician at its Eastern Colorado Healthcare System ("ECHCS"), a hospital complex in Denver. Administrative Record ("A.R.") 181, 1917.  In addition to treating patients, Doe supervised residents from the University of Colorado Medical School who worked at the hospital.  See id. at 180.

A.   The Agency's Investigation of Complaints against Doe and Her Proposed Removal

In the fall of 2017, complaints from residents began to emerge about Doe's patient care, professionalism, and communications skills.  See id. at 231–35.  The University responded in December 2017 by removing her from resident supervision duties pending an internal review. See id. at 229–30.  Around the same time, the chief of the hospital's anesthesiology department, Dr. Ian Black, received similar complaints about Doe from numerous colleagues and staff members.  See id. at 816–20.  On February 14, 2018, the agency summarily suspended Doe's clinical privileges "pending a comprehensive review of the[] allegations."  Id. at 2170.  During the ensuing investigation, the agency interviewed some nine doctors and nurses who had lodged complaints about Doe or worked with her during the relevant timeframe.  See id. at 244–351.

The agency's Professional Standards Council, consisting of 21 heads of various hospital services, reviewed the investigation's findings.  See id. at 185, 193.  The Council voted to recommend that Doe's clinical privileges be permanently revoked.  Id. at 193.  On July 31, 2018,

the chair of the Professional Standards Council, ECHCS Chief of Staff Dr. Ellen Mangione, drafted a memorandum entitled "Proposed Removal — Title 38 Aggravating & Mitigating Factors." Id. at 193, 180–83.  The memo discussed the eleven factors that the VA uses to determine the appropriate penalty to impose following an adverse personnel finding.  See id. at 180–83; see also id. at 2986–89 (listing factors in VA handbook).  These factors essentially track the twelve "Douglas factors" used in Title V personnel actions for most other government employees.  See Douglas v. Veterans Admin., 5 M.S.P.R. 280, 305–06 (M.S.P.B. 1981).  Applying those factors, the memo concluded that removal would be the only adequate sanction. See A.R. 183.

On August 1, 2018, the agency formally notified Doe of its proposal to remove her from federal service and permanently revoke her clinical privileges at ECHCS, based on a charge of "Unprofessional Conduct." Id. at 91–92.  The charge was supported by eight "specifications" of inappropriate conduct. Id.  Along with the notification, the agency provided Doe with Dr. Mangione's Aggravating & Mitigating Factors memorandum, as well as an evidence file containing summaries of the investigation interviews noted above and related documentation. See id. at 93, 180–83, 206–358.  Doe submitted a written response two weeks later.  See id. at 125–45.

B.  Initial Decision

On August 20, 2018, the agency's deciding official, ECHCS Director Sallie Houser-Hanfelder, upheld five of the eight specifications of misconduct and the overall charge of unprofessional conduct.[2] Id. at 101, 103.  She also upheld Doe's proposed removal from

---

[2]  Both Ms. Houser-Hanfelder and the proposing official, Dr. Mangione, have since retired from the agency.  See A.R. 472, 2371.

employment and the revocation of her clinical privileges.  Id. at 101.  Her decision expressly

incorporated the analysis in Dr. Mangione's Aggravating & Mitigating Factors memorandum.

Id.  The sustained Specifications were numbered 1, 2, 4, 5, and 8.  Id.

> Specification 1 alleged that:
>
> On February 9, 2018, during a parathyroidectomy procedure on patient C2171, you placed an arterial line without appropriate evaluation and assessment, without confirming through additional readings or physical exam the patient's vital signs, and without appropriate communication with other staff.

Id. at 91.

> Specification 2 alleged that:
>
> On February 7, 2018, during a procedure on patient S8826 involving excision of a pilonidal sinus and left scrotal mass, you removed an inflated endotracheal tube without allowing for evaluation of placement prior to doing so, and you administered medications without appropriate communication and coordination with the CRNA.

Id.

> Specification 4 alleged that:
>
> On January 29, 2018, during an endoscopic retrograde cholangiopancreatography (ERCP) procedure on patient W0436, you entered the room where fluoroscopy was in use without lead protection, and you demanded that the fluoroscopy be ceased during the procedure.  The reason you entered the room involved another case.

Id.

> Specification 5 alleged that:
>
> On November 3, 2017, during a left cubital tunnel release on patient T330 I, you were distracted by a conversation on your cell phone involving an unrelated matter.  Due to your distraction, you were unprepared to address the patient's discomfort, and you were unaware of the surgeon's progress on the case.

Id. at 91–92.

And Specification 8 alleged that:

Between on or about May 1, 2016 and on or about December 1, 2017, while serving as an attending anesthesiologist, you were unprofessional in your interactions with residents from the University of Colorado Anesthesiology Residency Program.  Specifically, you were difficult to reach or not present during key parts of patient care, and you provided inadequate supervision and guidance to anesthesiology residents.  You also displayed a lack of effective, respectful, and professional communication with residents before, during, and after cases.

Id. at 92.

C.  Disciplinary Appeals Board Decision

Doe administratively appealed the hospital's initial decision, and the agency appointed a Disciplinary Appeals Board ("DAB") to consider the appeal.  Id. at 5.  Prior to the hearing, the parties exchanged witness lists and objections to proposed evidentiary submissions.  As relevant here, the DAB Chairperson Dr. Yasser Sakawi, Chief of Anesthesiology at another VA medical center, id., prohibited Doe from introducing a supplemental evidence file containing various records regarding her past performance, as well as evidence that Doe intended to use to show bias on behalf of testifying witnesses at the hearing.  See id. at 649, 982.  The record is silent as to the reason for this exclusion.  See, e.g., id. at 649 (summarily stating that "the board re-iterates that testimony from other proceedings . . . or other sworn depositions will not be considered); id. at 982 ("None of those additional records will be considered . . . ."); id. at 1901 ("[Y]ou're not allowed to ask . . . about anything that does not exist in the [ECHCS] evidence file.").  The DAB also did not permit Doe to offer Dr. John Ziegler, a former Chief of Anesthesiology at the Salt Lake City VA Medical Center, as an expert in her defense.  See id. at 499, 638.  The DAB Chair found no need for any expertise in addition to that possessed by the Board, adding that the agency was not putting on a competing expert witness.  See id. at 638 ("The Chairperson will not allow an expert witness as the chairperson considers himself an expert in the field of

anesthesiology."); id. at 1799–1800 (stating the same in response to a request from Doe's counsel). Dr. Ziegler was nevertheless allowed to testify as a lay witness. See id. at 1888–1911 (Dr. Ziegler's testimony). The DAB evidence file included Doe's prior responses, statements from various ECHCS and VA employees, and the evidence file provided to her before the initial decision. See Index to A.R. 1–3.

Following a hearing in which Doe was able to present evidence, cross-examine witnesses, lodge objections, and testify on her own behalf, the DAB issued its decision on January 15, 2020. See A.R. 974–2168 (hearing transcript). The DAB upheld the charge of "Unprofessional Conduct," the same underlying specifications as the initial decision, and the penalty of removal. See id. at 965–71 (DAB decision). The decision discussed the relevant evidence and penalty factors at length. See id. at 966–70.

### D. Doe's Collateral Complaints

Meanwhile, as the hospital's investigation and administrative process played out, Doe lodged two administrative complaints concerning working conditions at the hospital. In February 2018, she filed a complaint with the agency's Equal Employment Opportunity office stemming from a verbal altercation with a fellow doctor over Doe's treatment of a patient. See id. at 2492; Defs.' Answer ¶ 25 (ECF No. 19). And in October 2018, she filed a whistleblower claim with the Merit Systems Protection Board (MSPB). See A.R. 461–65. That claim alleged that the hospital's system for scheduling anesthesiology staff was "fraudulent," that her colleagues were providing substandard care, and that Doe had been retaliated against for raising these concerns. Id. Both claims remained pending as of the briefing in this case. See Defs.' Mem. in Supp. of Cross-Mot. for Summ. J. ("Defs.' Mot.") at 8 (ECF No. 24-1). They are relevant here only because Doe attempted to introduce evidence about or from these collateral

proceedings to show bias or improper motivation on the part of witnesses who testified before the DAB.  See, e.g., A.R. 729–30, 873–75.

E.   The Current Suit

After the DAB issued its decision, Doe brought suit in this Court against ECHCS, the DAB, and a VA official in charge of the Veterans Health Administration.  Originally proceeding *pro se*, she filed a verified complaint on August 4, 2020, followed closely by a request for a temporary restraining order and preliminary injunction, seeking to prevent the VA from reporting any adverse action to the National Practitioner Data Bank, a government database of adverse actions against health care providers.  See Compl. (ECF No. 1); Pl.'s Mot. for TRO and Prelim. Inj. at 2 (ECF No. 5-1).  After retaining counsel, Doe withdrew her request for preliminary relief and the Court set a schedule for Doe to amend her complaint and for the parties to brief summary judgment.  See ECF No. 14; Oct. 6, 2020 Scheduling Order.  Both sides have now cross-moved for summary judgment, and the motions are ripe.

In her summary judgment motion, Doe argues that the DAB's decision should be set aside for legal and evidentiary insufficiency.  In particular, Doe argues that the DAB's decision failed to consider relevant evidence, violated the standards for lawful administrative action in 38 U.S.C. § 7462(f), did not comply with internal VA directives, denied her due process, and was not supported by substantial evidence.  See Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mot.") at 7–28, 39–45 (ECF No. 21-2).  Doe further alleges that the DAB failed to properly apply the relevant penalty factors when evaluating whether to remove her.  See id. at 28–39.  The agency asks the Court to uphold the DAB decision in full.

## II.   Legal Standards

Doe contends that the DAB's decision should be set aside because it violates both her constitutional right to procedural due process and the statutory standards governing adverse employment determinations for VA physicians.

The Fifth Amendment guarantees that the government will not deprive citizens of any property without due process of law.  See U.S. Const. amend. V.  Because "property" in this context can include government employment, the Supreme Court has recognized that tenured government employees are generally entitled to due process protections, including notice and a hearing, prior to termination.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538–39, 542 (1985).  But the Fifth Amendment "only requires that a person receive his 'due' process, not every procedural device that [s]he may claim or desire."  Johnson v. United States, 628 F.2d 187, 194 (D.C. Cir. 1980).  Rather, "[t]he precise form of notice and the precise kind of hearing required depends upon a balancing of the competing public and private interests involved, as defined by the now familiar Mathews factors: (1) the private interest affected by the government action; (2) the risk of erroneous deprivation and the value of additional safeguards; and (3) the government's interest, including the fiscal and financial burdens that additional or substitute procedural requirements would entail."  Propert v. District of Columbia, 948 F.2d 1327, 1332 (D.C. Cir. 1991) (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).  Thus, in the public employment context, a hearing, "though necessary, need not be elaborate."  Loudermill, 470 U.S. at 545.  At base, "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."  Id. at 546.

Beyond these constitutional constraints, the terms and conditions of the employment of VA doctors are governed by Title 38 of the U.S. Code. As relevant here, 38 U.S.C. § 7462(f) permits VA doctors to seek judicial review of DAB decisions. The applicable standards of review mirror those of the Administrative Procedure Act ("APA"): The reviewing court must "review the record and hold unlawful and set aside any agency action, finding, or conclusion found to be [] (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) obtained without procedures required by law, rule, or regulation having been followed; or (C) unsupported by substantial evidence." 38 U.S.C. § 7462(f)(2); see also Abaqueta v. United States, 255 F. Supp. 2d 1020, 1024 (D. Ariz. 2003) (noting applicability of general administrative law standard of review and precedent); Rajan v. Principi, 90 F. App'x 262, 263 n.1 (9th Cir. 2004) (same).

A "fundamental rule of administrative law" is that a court reviewing an agency's decision "must judge the propriety of [the agency] action solely by the grounds invoked by the agency." SEC v. Chenery Corp., 332 U.S. 194, 196 (1947). Judicial review therefore "is to be based on the full administrative record that was before the [agency] at the time [it] made [its] decision." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971).

When considering whether the agency's decision was "arbitrary or capricious," the "standard of review is a highly deferential one, which presumes the agency's action to be valid." Env't Def. Fund, Inc. v. Costle, 657 F.2d 275, 283 (D.C. Cir. 1981) (citation omitted). In applying this "narrow" review, a court may not "substitute its judgment for that of the agency," but instead should ask only "whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Citizens to Preserve Overton Park, 401 U.S. at 416.

Similarly, when reviewing an agency's findings of fact, the Court "is limited to whether those findings are supported by substantial evidence." Brown v. Colvin, 219 F. Supp. 3d 121, 125 (D.D.C. 2016) (quoting Broyles v. Astrue, 910 F. Supp. 2d 55, 60 (D.D.C. 2012)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). The substantial evidence standard requires "more than a scintilla, but can be satisfied by something less than a preponderance of evidence." Id. The question is not if the plaintiff's view of the facts supports her version of what transpired, but rather if the agency's interpretation is "reasonably defensible." J.A. Jones Mgmt. Servs. v. FAA, 225 F.3d 761, 765 (D.C. Cir. 2000) (quoting Harter Tomato Prods. Co. v. NLRB, 133 F.3d 934, 938 (D.C. Cir. 1998)).

## III.  Analysis

Doe raises several procedural objections to her DAB hearing, under both the Due Process Clause and 38 U.S.C. § 7462(f)(2). She also attacks the decision the DAB reached, contending that the Board failed to properly consider the relevant factors for upholding the penalty against her, and that its conclusion was not supported by substantial evidence. For reasons explained below, the Court finds for the agency on all of Doe's procedural challenges save one: her objection to the exclusion of certain supplemental exhibits. Because the DAB failed to explain this exclusion, the Court will remand this matter to the agency to enable the DAB to provide such an explanation. The Court will reserve judgment on the propriety of the DAB's reasoning and the evidentiary sufficiency of its decision until remand is complete.

A.  Challenges to the Pre-Hearing Notice

Doe alleges that the DAB process failed to provide her with full notice of the allegations against her and the evidence supporting them, in violation of her right to due process and a

10

directive in the VA Handbook governing pre-termination procedures.  See Pl.'s Mot. at 18–21;
see id. at 26 (discussing VA Directive 5021/9, see A.R. 2960).  In particular, she faults the
agency for failing to give her adequate notice of testimony and allegations by Certified
Registered Nurse Anesthetists ("CRNAs") Timothy Christie and Sarah Fredriksson, Doctors Ian
Black, Rajshri Bolson, Daniel Beck, and Melanie Torres, and various "unnamed anesthesiology
residents."  See, e.g., Pl.'s Resp. and Reply at 19–22 (ECF No. 25).  The Court finds these
objections to be without merit, as the agency gave Doe more than adequate notice of all the
materials under consideration.

　　　As an initial matter, the Court agrees that Doe was entitled to the due process protections
laid out in Loudermill, 470 U.S. at 542.  Prior to the disciplinary action under review, Doe was
an active, full-time, permanent employee of the VA.  See Amend. Compl. ¶ 57 (ECF No. 18);
Defs.' Answer ¶ 57.  By its plain terms, the DAB decision removed Doe from that federal
service.[3]  See A.R. 971.  Because federal employment is a well-established property interest,[4] the

---

[3]  At times the DAB decision indicated that its determinations were "made solely for the
purpose of determining whether the revocation of clinical privileges by the Medical Center
Director is reportable to the National Practitioner Data Bank."  A.R. 971.  However, the DAB
also stated that it was upholding the penalty of removal from federal service, and the letter
accompanying the decision stated likewise.  See id. at 971–72.  The Court also notes that the
agency does not contest that Doe has some property right affected by the DAB's decision (and
thus that she would be entitled to due process protections under the Fifth Amendment).

[4]  At points, Doe argues that she also has a liberty interest in her professional reputation.
See Pl.'s Mot. at 8–9.  But she does not explain why, given her property interest in her
employment, any liberty interest would entitle her to additional process.  To the extent Doe is
attempting to make out a "stigma-plus" or "reputation-plus" claim, the Court notes that the
typical remedy for such claims is a "name-clearing hearing" in which the party is permitted to
present evidence rebutting negative information.  See McCormick v. District of Columbia, 899
F. Supp. 2d 59, 67–69 (D.D.C. 2012), aff'd, 752 F.3d 980 (D.C. Cir. 2014) (finding that agency
post-termination procedures provided sufficient process and defeated due process claim for
further name-clearing hearing).  But Doe has not made any argument that the DAB hearing did
not fulfill that role to the extent that it complies with the general dictates of due process.

DAB could not deprive her of it without due process of law.  See Loudermill, 407 U.S. at 538–39.

Notice is a cornerstone of due process.  "The Due Process Clause and the APA require that an agency setting a matter for hearing provide parties with adequate notice of the issues that would be considered, and ultimately resolved, at that hearing."  Pub. Serv. Comm'n of Ky. v. FERC, 397 F.3d 1004, 1012 (D.C. Cir. 2005) (Roberts, J.) (internal quotation marks omitted). As with due process generally, notice has no "technical conception," but focuses instead on giving individuals a fair opportunity to respond to the allegations in advance of the hearing.  See Ralls Corp. v. Comm. on Foreign Inv. in U.S., 758 F.3d 296, 317–18 (D.C. Cir. 2014); see also English v. District of Columbia, 815 F. Supp. 2d 254, 264 (D.D.C. 2011), aff'd, 717 F.3d 968 (D.C. Cir. 2013) ("[T]he nature of that notice . . . is flexible.").

While Doe complains that she was blindsided by several specific allegations raised in the DAB hearing, it is clear from the record that she had notice of all of the allegations before the hearing, and even before the initial revocation of her clinical privileges on August 20, 2018. Prior to the initial decision, ECHCS leadership sent Doe the specifications underlying the charge of unprofessional conduct, the Aggravating & Mitigating Factors memorandum analyzing her performance and reviewing the evidence the agency had compiled and intended to rely on, and a file containing that evidence.  See A.R. 91–94, 180–83, 206–358.  Doe submitted a written response to these documents and the proposed removal on August 14, 2018.  See id. at 125–45. That response confronted the allegations of misconduct specification-by-specification and discussed her interactions with several of the named witnesses noted above.  See, e.g., id. at 126–28 (discussing Specification 1 and CRNA Christie); id. at 128–31 (discussing Specification 2 and CRNA Fredriksson); id. at 133–34 (discussing Specification 5 and Dr. Bolson).

Doe contends that this notice was nevertheless inadequate because, in her view, the DAB's final decision improperly relied on *general* comments by those witnesses about her work and demeanor, even as the charge document's specifications gave her notice of their allegations of *particular* unprofessional behavior.  See Pl.'s Mot. at 19–20.  But the Aggravating & Mitigating Factors memorandum also provided to Doe before the DAB hearing pointed to "other background documentation in the evidence file" demonstrating "a long-standing pattern going well beyond the individual charged events."  A.R. 180.  In fact, for every statement in the DAB's decision with which Doe quibbles, there is a substantially similar allegation in the pre-hearing evidentiary file—in many cases from the same individual ultimately cited in the DAB's final report.  See, e.g., id. at 241–42 (CRNA Christie complaints referencing "ongoing issue[s]"); id. at 253 (CRNA Fredriksson email noting general concerns); id. at 304 (Dr. Bolson statement evaluating "many interactions"); id. at 232–35 (cataloguing resident complaints); id. at 339–42 (noting dissatisfaction among other staff members).  Doe's initial written response even addresses such a "general allegation" from Dr. Bolson, id. at 133, "further demonstrat[ing] that [s]he understood the nature of the charges against [her]," Alvarado v. Dep't of Air Force, 97 M.S.P.R. 389, 393 (M.S.P.B. 2004).  To the extent Doe challenges the Board's reliance on opinion evidence speaking to incidents beyond the scope of the relevant specifications, that objection goes to the proper weight to accord this testimony, not the adequacy of any notice.[5]

---

[5]  The court notes that the weighing of the evidence is generally a question on which the DAB is entitled to great deference.  See J.A. Jones Mgmt. Servs., 225 F.3d at 765.  But because it remands on other procedural grounds, the Court does not resolve this issue here.  See infra III.C.6.

B.  Challenges to the Conduct of the DAB Proceedings

Doe raises two objections to the DAB's taking of evidence at her 2019 hearing: to the exclusion of certain supplemental exhibits and expert testimony and to the denial of her request to cross-examine witnesses.  The Court sustains a portion of this first challenge, but otherwise finds that the DAB's proceedings comported with both constitutional and statutory requirements. The Court takes Doe's challenges in turn.

1.  *Evidentiary Challenges*

Doe objects to the DAB's decisions to exclude certain supplemental evidence, preclude her from impeaching witnesses with prior sworn testimony from collateral proceedings, and prevent her from offering expert testimony at the hearing.  She contends that these exclusions violated her due process rights and were "arbitrary, capricious, [or] an abuse of discretion" under 38 U.S.C. § 7462(f).  See Pl.'s Mot. at 14, 41–43.

The Court finds that the DAB's failure to explain its evidentiary decisions regarding Doe's supplemental exhibits and introduction of prior sworn testimony requires remand under the statutory standards applicable to agency adjudications.  As a result, the Court need not reach the question of whether the DAB's actions on that front were also constitutionally infirm. However, the Court reaches a different conclusion with respect to Doe's offer of expert testimony before the Board.  As to that objection, the Court finds that the DAB's decision to reject this testimony violated neither its statutory nor its constitutional obligations.

a.  Legal principles

The APA, 5 U.SC. § 556(d), provides that, in agency adjudications,

Any oral or documentary evidence may be received, but the agency as a matter of policy shall provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence.  A sanction may not be imposed or rule or order issued except on consideration of the whole record or those parts thereof cited by a party

and supported by and in accordance with the reliable, probative, and substantial evidence.[6]

As such, agencies have broad discretion when it comes to what evidence they may admit or exclude from their proceedings.  See, e.g., EchoStar Commc'ns Corp. v. FCC, 292 F.3d 749, 753 (D.C. Cir. 2002); Nat'l Airlines, Inc. v. CAB, 321 F.2d 380, 383 (D.C. Cir. 1963).  The Federal Rules of Evidence do not apply, though they often play a background role in informing agency decisions on evidentiary matters.  See, e.g., FTC v. Cement Inst., 333 U.S. 683, 705–06 (1948).

Although agencies have broad discretion on this front, they should generally consider admitting any relevant evidence unless it violates some policy or procedure or it is, for example, repetitive.  See Atlas Copco, Inc. v. EPA, 642 F.2d 458, 466–67 (D.C. Cir. 1979); 5 U.S.C. § 556(d).  This is, in some ways, just an application of the more general principle that failure to consider an "important aspect" of the problem may render an agency's decision arbitrary, whether in rulemaking or adjudication.  See, e.g., Morall v. DEA, 412 F.3d 165, 178 (D.C. Cir. 2005) (holding "decision does not withstand review because the agency decisionmaker entirely ignored relevant evidence"); El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health & Human Servs., 396 F.3d 1265, 1276–78 (D.C. Cir. 2005) (finding agency action arbitrary and capricious in failing to address relevant evidence before it); Lakeland Bus Lines v. NLRB, 347 F.3d 955, 962 (D.C. Cir. 2003) (finding decision not supported because agency did not consider contradictory evidence); Robinson v. NTSB, 28 F.3d 210, 215–216 (D.C. Cir. 1994) (noting that agency may not ignore testimony bearing on critical fact in case).

---

[6]  The parties agree that the APA and precedents interpreting the APA supply the relevant principles.  See Pl.'s Mot. at 7 (citing Abaqueta, 255 F. Supp. 2d at 1024); Defs.' Mot. at 10 (citing Rajan, 90 F. App'x at 263 n.1).

Agencies are thus generally under an obligation to explain why relevant evidence should not be admitted.  As the D.C. Circuit has emphasized, "[o]ne of the most important safeguards of the rights of litigants . . . in proceedings before an administrative agency vested with discretion[] is that it cannot rightly exclude from consideration facts and circumstances relevant to its inquiry which upon due consideration may be persuasive weight in the exercise of its discretion."  Atlas Copco, Inc., 642 F.2d at 467 (citation omitted).  And when such relevant, potentially probative evidence is proffered, "[i]n the absence of supporting justification," a "blanket evidentiary exclusion is unreasonable."  Id.  An agency's failure to provide such a justification may render the exclusion arbitrary.  See Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 654 (1990) (explaining that agency must "take whatever steps it needs to provide an explanation that will enable the court to evaluate the agency's rationale at the time of decision"); Pub. Citizen, Inc. v. FAA, 988 F.2d 186, 197 (D.C. Cir. 1993) (noting that "[t]he requirement that agency action not be arbitrary and capricious includes a requirement that the agency adequately explain its result").  As noted elsewhere, this Court is limited to considering the justifications offered by the administrative body when evaluating the reasonability of its decisions.  See IMS, P.C. v. Alvarez, 129 F.3d 618, 623–24 (D.C. Cir. 1997).

         b.   Analysis

         i.   *Documentary evidence and prior testimony*

Doe argues that the agency improperly excluded certain exhibits she wished to offer into evidence or use to impeach witnesses called at the DAB hearing.  That additional evidence, amounting to some 280 pages, included documents purportedly relevant to Doe's claim that dysfunction and hostility were widespread in the hospital's anesthesiology department; emails from DAB witnesses in which they discuss Doe and, she claims, exhibit bias against her; various

positive evaluations of Doe's performance; and an assortment of other evidence Doe claims was inconsistent either with specific testimony offered by witnesses at the hearing or the penalty imposed.  See A.R. 669–948.  Doe also argues that the agency improperly prevented her from introducing prior sworn—and she says inconsistent—testimony given by DAB witnesses in other proceedings.  See, e.g., id. at 2655.

With respect to this material, the Court agrees with Doe on her statutory claim.[7]  The summary exclusion of Doe's additional documentary and impeachment evidence violated established principles of agency adjudication because the materials were at least arguably relevant and the DAB failed to give any reason justifying the exclusion.

As to relevance, portions of the supplemental evidence file appear to speak to each of the specifications underlying the charge.  The following three examples are illustrative.  *First*, Doe alleges that her supplemental evidence would have shown bias by testifying witnesses and that the complaints against her were improperly motivated.  For example, Doe argues that the excluded evidence would have given her a basis to impeach the testimony of Dr. Beck for his role in the alleged "post-call" scandal.  See Pl.'s Mot. at 13 (discussing A.R. 882–98).  The DAB relied on Dr. Beck's testimony in its final decision on Specification 8.  See A.R. 968.  But the evidence Doe wished to use to impeach him was excluded and the DAB elsewhere made clear that no such evidence could be used as the basis for a question.  See id. at 1901 ("[Y]ou're not allowed to ask . . . about anything that does not exist in the [ECHCS] evidence file.").  Doe has

_____

[7]  Because DAB's failure to explain its evidentiary decision requires remand under the relevant statutory standards, the Court need not reach the question of whether the DAB's actions on that front were also constitutionally infirm.  However, given the great discretion accorded to agencies on both evidentiary matters and hearing procedures more generally, the Court doubts that any due process violation would lie absent a statutory violation.

similar complaints regarding Dr. Black and Dr. Barnett, whose testimony the DAB relied on in Specifications 1 and 8.  See id. at 966–68.  *Second*, Doe's excluded evidence would have included peer references, previous performance reviews, and case reviews ECHCS had ordered from the Chief of Anesthesiology at the Miami VA, which found Doe did not violate the standard of care.  See id. at 695–715, 796–814, 832–57.  These reflected well on Doe and were potentially relevant to assessing both the specifications and the penalty factors relating to her past performance.  See id. at 965–70.  And *third*, the prior testimony Doe wished to introduce from CRNA Fredriksson and Dr. Black, to the extent it was inconsistent with their hearing testimony, may have spoken to the credibility of those witnesses, both of whom the DAB relied on in sustaining the charge.  See id.

The agency does not contest that the DAB offered no reason for the exclusion of Doe's supplemental evidence.  And the Court's own read of the record reveals none.  See, e.g., id. at 649 (summarily stating that "testimony from other proceedings such as MSPB hearings or other sworn depositions will not be considered); id. at 982–83 ("None of those additional records will be considered . . . ."); id. at 1901 ("[Y]ou're not allowed to ask . . . about anything that does not exist in the [ECHCS] evidence file.").  Instead, the agency argues that the DAB was nonetheless justified in excluding the evidence primarily because it concerned matters over which the DAB lacked jurisdiction or was generated in non-DAB proceedings.  See Defs.' Mot. at 13; see also Lerner v. Shinseki, No. 12-cv-565, 2013 WL 1758752, at *12 (W.D. Ky. Apr. 24, 2013) (holding that the court lacked jurisdiction over the plaintiff's claims for relief against the VA predicated on whistleblowing activities).  That may well have been the Chairman's reasoning.[8]  But the

_____

[8]  Because they did not come from the DAB in the first instance, the Court declines to decide whether the government's proffered justifications would have passed muster.  It will note,

Court cannot treat the agency's new justifications as if they came from the DAB.  See Citizens to Preserve Overton Park, 401 U.S. at 420.

"[I]f the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985).  Because the DAB failed to give any explanation for the exclusion of Doe's supplemental evidence file or the prior sworn testimony, the DAB's decision "cross[es] the line from the tolerably terse to the intolerably mute."  Greater Bos. Television Corp. v. FCC, 444 F.2d 841, 852 (D.C. Cir. 1970); see also AT&T Wireless Servs., Inc. v. FCC, 270 F.3d 959, 968 (D.C. Cir. 2001) ("Conclusory explanations for matters involving a central factual dispute where there is considerable evidence in conflict do not suffice to meet the deferential standards of our review.").  The Court will thus remand this matter to the DAB to either explain these exclusions or reconsider them in light of the Court's ruling.[9]

------------------------

however, that whether the DAB lacked jurisdiction over Doe's collateral proceedings is a separate question from whether evidence developed during those proceedings was relevant and otherwise admissible in the DAB hearing.  Courts routinely admit evidence from proceedings in other jurisdictions for the purpose of demonstrating such things as witness bias and testimonial inconsistency.  See, e.g., Fed. R. Evid. 613 (not limiting the admission of prior inconsistent statements to statements made in the case at bar).

[9]  The Court notes that any explanation given on remand need not be extensive; a plain statement may suffice.  See Bush–Quayle '92 Primary Comm., Inc. v. FEC, 104 F.3d 448, 454 (D.C. Cir. 1997) ("We may permit agency action to stand without elaborate explanation where distinctions between the case under review and the asserted precedent are so plain that no inconsistency appears."); Common Cause v. FEC, 906 F.2d 705, 706 (D.C. Cir. 1990) (noting that "a decision of less than ideal clarity must still be upheld so long as the agency's path may reasonably be discerned" (internal quotation marks omitted)).

ii.   *Expert testimony*

The Court reaches a different result with respect to the DAB's decision to preclude Dr. John Ziegler from testifying as an expert for Doe regarding patient care, academic contracts with the VA, and the proper penalty.  See A.R. 638, 642–43.  Importantly, Dr. Ziegler was still permitted to—and did—testify without being qualified as an expert.  See id. at 1888–1911 (Dr. Ziegler's testimony).  Doe nevertheless urges remand on this point, too, claiming that the DAB's choice to consider Dr. Ziegler only as a lay witness violated principles of due process and administrative law.  See Pl.'s Mot. at 14–15.  The agency retorts that Dr. Ziegler's expert testimony was neither relevant nor necessary to aid the trier of fact, and so was properly excluded.  See Defs.' Mot. at 19–20.  The agency has the better of this argument.

The DAB's exclusion of expert testimony from Dr. Ziegler was not arbitrary or capricious because the Board's Chairman explained his decision, and that explanation was sufficient under this Court's deferential standard of review.  As explained above, agencies must provide a "supporting justification" for decisions excluding evidence that may be relevant and persuasive.  Atlas Copco, Inc., 642 F.2d at 466–67.  Here—in contrast to its silence with respect to Doe's additional documentary evidence—the DAB did so.  The DAB Chairperson explained that, because he served as an Anesthesiology Chief in another VA hospital, the Board possessed sufficient expertise in the subjects upon which Dr. Ziegler would testify and thus did not need his assistance.  See A.R. 638 ("The Chairperson will not allow an expert witness as the chairperson considers himself an expert in the field of anesthesiology."); id. at 1799–800 (stating the same in response to a request from Doe's counsel).

That explanation is sufficient.  Even in formal court proceedings, expert testimony is generally excludable if it will not aid the trier of fact.  See Fed. R. Evid. 702(a).  Doe argues that

Dr. Ziegler's expert testimony was necessary to help the DAB establish an "objective standard" against which Doe's conduct could be judged.  Pl.'s Mot. at 24; see also id. at 14–15 (citing Niam v. Ashcroft, 354 F.3d 652, 660 (7th Cir. 2004), for proposition that "spirit" of Rule 702 should govern administrative proceedings).  However, as explained below, the standard here was sufficiently clear.  See infra III.C.1.  Further, an agency decisionmaker is generally permitted to rely on its own expertise when deciding matters within that field.  See, e.g., Sabine River Auth. v. U.S. Dep't of Interior, 951 F.2d 669, 678 (5th Cir. 1992) ("The agency may even rely on the opinions of its own experts, so long as the experts are qualified and express a reasonable opinion."); Chem. Weapons Working Grp. v. U.S. Dep't of Def., 655 F. Supp. 2d 18, 35 (D.D.C. 2009).  Doe does not dispute that the DAB chair was, in fact, an expert in such matters.  See Pl.'s Mot. at 15.  Because the DAB did not require outside expertise in making its decision, it did not act arbitrarily or capriciously in preventing Dr. Ziegler from testifying as an expert.

Nor did the DAB's evidentiary decision violate due process.  During his direct testimony, Dr. Ziegler spoke of his extensive credentials and experience working with the VA.  See A.R. 1890–94.  And in his capacity as a lay witness, Dr. Ziegler was permitted to fully express his opinion on Doe's performance, the reasonableness of the investigation and penalty, and the culture of the VA.  See id. at 1907–11.  Far from denying Doe due process, the DAB went so far as to prevent the agency from cross-examining or impeaching Dr. Ziegler after he made these statements.  Id. at 1911.  Doe has not identified any way in which allowing Dr. Ziegler to testify as an expert, rather than lay, witness would have offered her meaningful additional protection—a key element of the due process inquiry.  See Mathews, 424 U.S. at 335.  Given these features of Dr. Ziegler's testimony, Doe cannot show that the agency's refusal to qualify him as an expert violated the "flexible" standards of due process.  See, e.g., Ralls Corp., 758 F.3d at 317.

 2.   *Cross-Examination of Witnesses*

Doe next argues that the agency violated her due process rights by denying her an opportunity to cross-examine the proposing and deciding officials for her initial removal from service.  The Court disagrees.

In some circumstances, procedural due process may require an agency to afford a party the right to cross-examine witnesses who testify at the hearing.  See Richardson v. Perales, 402 U.S. 389, 409–10 (1971); Goldberg v. Kelly, 397 U. S. 254, 269 (1970).  However, administrative proceedings are not formal trials, and the right to cross-examine witnesses in administrative hearings is not absolute, particularly where the individuals a party seeks to cross-examine did not appear before the tribunal in question.  See, e.g., Cellular Mobile Sys., Inc. v. FCC, 782 F.2d 182, 198 (D.C. Cir. 1985) ("Cross-examination is . . . not an automatic right conferred by the APA[.]"); Am. Pub. Gas Ass'n v. Fed. Power Comm'n, 498 F.2d 718, 723 (D.C. Cir. 1974) ("Even in a formal adjudicatory hearing under the APA, . . . cross examination is not always a right."); Passmore v. Astrue, 533 F.3d 658, 661–62 (8th Cir. 2008) (holding there is no absolute right to cross-examination even when the regulation affords some right to subpoena a witness); Foxy Lady, Inc. v. City of Atlanta, 347 F.3d 1232, 1237 (11th Cir. 2003) ("[N]o absolute or independent right to subpoena witnesses exists during administrative proceedings, and . . . procedural due process . . . does not require an absolute or independent right to subpoena witnesses in administrative hearings.").

Here, the officials Doe wishes to cross-examine presided over the initial removal decision on review before the DAB.  They did not appear before the DAB because they had left the agency prior to the DAB hearing, see A.R. 472, 2371, and, more relevantly, because they were not direct witnesses substantiating any conduct at issue in Doe's case.  Doe's justification for

cross-examining these officials was to challenge the initial decision.  But Doe did not need to cross-examine these officials to challenge the initial decision, as the entire DAB proceeding was precisely about whether the findings in the initial decision were correct.  The denial of cross-examination thus did not deprive her of due process.[10]

C.  Objections to the DAB's Analysis and Conclusions

Doe also raises several challenges to the DAB's reasoning and the conclusions it reached. The Court rejects most of these arguments easily, as it finds that Doe has generally misconstrued the standards governing the DAB's analysis.  But the Court does not reach the portions of Doe's challenge that go to the DAB's ultimate weighing of evidence.  Because the evidence before the agency may change on remand, the Court holds off on evaluating these claims at this juncture.

1.  *Application of an "Objective" Standard*

Doe claims that the agency failed to properly announce and apply an objective standard when upholding the charge of "Unprofessional Conduct."  See Pl.'s Mot. at 22–24.  For this reason, she says its decision failed to apprise her of the standard against which her conduct was measured, rendering the conclusion arbitrary and capricious.  This argument is meritless.

An agency may "discipline employees for particular instances of misconduct under broadly-phrased regulations."  Abaqueta, 255 F. Supp. 2d at 1026 (citing Brown v. Dep't of Navy, 229 F.3d 1356, 1358–59 (Fed Cir. 2000)).  "The fact that there may be no direct precedent for the action taken in a particular case does not . . . prohibit the agency from taking adverse

---

[10]  The same result obtains under any statutory mandate, as a party in an adjudicatory context is only entitled "to conduct cross-examination as may be required for a full and true disclosure of the facts."  5 U.S.C. § 556(d).  As noted above, the DAB met that standard with respect to the initial decisionmakers by providing Doe with the opportunity to cross-examine witnesses at the DAB hearing and generally test the basis of the initial decision.

action if it is consistent with general principles of federal employment law." <u>Brown</u>, 229 F.3d at 1363. Even where an employee's action violates "no specific hospital regulation," that employee may nonetheless "be subject to discipline" where, for instance, that employee acted "imprudent[ly]." <u>Gipson v. Veterans Admin.</u>, 682 F.2d 1004, 1009 (D.C. Cir. 1982). Similarly, "violations of professional conduct" may be punished even where the VA's regulations are general in scope. <u>Abaqueta</u>, 255 F. Supp. 2d at 1026. Here, the VA was well within bounds to rely on the general charge of "Unprofessional Conduct" to discipline Doe. Indeed, when disputing the penalty in front of the agency, Doe's attorneys, self-described "long-standing practitioner[s] of federal employment law who [have] had many cases against the Department of Veterans Affairs for disciplinary actions taken against employees," admitted they were "well aware of the fact that this charge is an extremely common charge . . . ." A.R. 36–37. Doe likewise conceded that the charge against her is described in the VA's Table of Penalties. <u>Id</u>. at 37. Accordingly, the standard applied by the DAB here was not arbitrary.[11]

## 2. Burden of Proof for Each Specification

Doe next claims that the agency's decision was improper because it failed to prove the essence of each charge—by which she appears to mean the particular conduct in each specification. However, there is no requirement that the agency uphold each specification

---

[11]   Doe also argues that the failure to provide adequate notice of the events underlying the charge renders the DAB's application of the standard arbitrary and capricious. But the Court has already rejected Doe's notice arguments. Because the DAB gave sufficient notice of the events at issue, its application of the standard was not arbitrary. <u>See</u> <u>Otero v. U.S. Postal Serv.</u>, 73 M.S.P.R. 198, 202 (M.S.P.B. 1997) ("Nothing in law or regulation requires that an agency affix a label to a charge of misconduct. If it so chooses, it may simply describe actions that constitute misbehavior in a narrative form, and have its discipline sustained if the efficiency of the service suffers because of the misconduct.").

precisely when upholding the overall charge.  See Otero v. U.S. Postal Serv., 73 M.S.P.R. 198,

204 (M.S.P.B. 1997) ("[A]lthough . . . a charge must fall if any element of the charge label is not

proven, that does not thereby mean that a charge must fall if any portion of the narrative

description of the charge is not proven.").  Doe attempts to distinguish Otero by recycling her

notice argument, contending that the agency's failure to inform her of the substance of the

allegations against her render Otero's principles inapplicable.  See Pl.'s Resp. and Reply at 29.

The Court rejects this effort because, as explained above, notice in this matter was adequate.  See

supra III.A.  Here, the relevant charge was "Unprofessional Conduct," and the specifications—of

which Doe was fully aware—simply supplied evidence for that charge.  See A.R. 965–72.

Prevailing standards did not require the DAB to find that each specification was precisely correct

to uphold the overall charge.  Otero, 73 M.S.P.R. at 204.  To the extent that Doe's real complaint

is that the agency did not have sufficient evidence to support any particular specification, that is

a question of substantial evidence which the Court does not rule on now.  See infra III.C.6.

### 3.  Consideration of Hearsay Evidence

Doe argues that the agency could not rely on hearsay when upholding Specification 8.

She is mistaken.  "[I]t is well-settled not only that hearsay can be considered by an

administrative agency but that it can constitute substantial evidence."  Lacson v. U.S. Dep't of

Homeland Sec., 726 F.3d 170, 178 (D.C. Cir. 2013) (quoting EchoStar Commc'ns Corp., 292

F.3d at 753).  To the extent Doe's argument on this point goes to the weight given the hearsay

evidence, again, that is a question of substantial evidence on which the Court reserves judgment.

### 4.  Consideration of Additional Medical Documentation

Doe also claims that various VA directives required the DAB to consider additional

documentation she provided of her own medical issues, which she had presented as a defense to

the misconduct charge.  See Pl.'s Mot. at 27.  The relevant directive undermines this claim.  It provides that the agency need only give an appellant who "raises an issue of mental or physical condition . . . the opportunity to present evidence relating to the condition."  A.R. 3065.  The DAB did, as Doe concedes, provide her with such an opportunity and did consider portions of her medical documentation.  See Pl.'s Resp. and Reply at 35.  As a result, Doe has not shown that the DAB's failure to consider all her medical documentation violated this directive.[12]

### 5. *Failure to Consider Improvement Plan*

Doe's next argument is that the agency violated VA Directive 5013 by failing to put her on a performance improvement plan.  See Pl.'s Resp. and Reply at 36–37.  The Court easily rejects this claim because that directive does not apply to physician employees appointed under 38 U.S.C. § 7401(1), such as Doe.  See Ex. 1 to Defs.' Reply at I-1 (ECF No. 27).

### 6. *Douglas Factors and Substantial Evidence Challenges*

Finally, the Court reserves judgment on Doe's two remaining, substantive concerns about the DAB's analysis and conclusion.  Doe spends a substantial portion of her briefing discussing why, in her view, the DAB did not properly consider and weigh the multi-factor test for upholding penalties, as laid out in VA Handbook 5021 (and mirroring the test set out for Title 5 personnel in Douglas, 5 M.S.P.R. at 305–06).  See Pl's Mot. at 28–39.  In addition, she claims that the DAB's decision was unsupported by substantial evidence, in violation of 38 U.S.C. § 7462(f)(2).  See id. at 42–45.  As explained above, the Court is remanding this matter to the agency to supplement the record with respect to the DAB's refusal to admit certain evidence.

---

[12] Doe's arguments regarding the extent of her disability and the evidence for a causal relationship between her disability and the charged conduct go to the sufficiency of the evidence and will not be considered at this stage.  See Pl.'s Resp. and Reply at 35; infra III.C.6.

Should this case return to the district court following remand, the Court will be able to fully evaluate the DAB's evidentiary decisions, and then turn to these remaining questions about the appropriateness of the DAB's analysis and decision on the final evidentiary record.

**IV.  Conclusion**

For the foregoing reasons, the Court will grant in part and deny in part both the Plaintiff's and the Defendants' motions for summary judgment, and remand the matter to the agency.  On remand, the DAB may provide an explanation for its decision to exclude Doe's supplemental evidence and the prior sworn testimony here, or reconsider its decision in light of any of the excluded evidence it may now choose to admit.  A separate Order will follow.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  <u>September 22, 2021</u>