## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JANE DOE, M.D.,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **STEVEN L. LIEBERMAN,** in his official | ) | |
| capacity as Acting Principal Under Secretary | ) | |
| for Health, Department of Veterans Affairs, | ) | |
| Veterans Health Administration, | ) | |
| | ) | Case No. 1:20-cv-02148-CRC |
| **DISCIPLINARY APPEALS BOARD**, | ) | |
| Department of Veterans Affairs, Veterans | ) | |
| Health Administration, and | ) | |
| | ) | |
| **EASTERN COLORADO HEALTHCARE** | ) | |
| **SYSTEM,** Department of Veterans Affairs, | ) | |
| Veterans Health Administration | ) | |
| | ) | |
| Defendants. | ) | |

_____

**DR. DOE'S REPLY IN SUPPORT OF HER RENEWED SUMMARY JUDGMENT MOTION
AND RESPONSE IN OPPOSITION TO DEFENDANTS' CROSS-SUMMARY JUDGMENT
MOTION**

_____

JONES & KELLER, P.C.
   Thomas P. McMahon
   tmcmahon@joneskeller.com
   Admitted *pro hac vice*
   1675 Broadway, 26th Floor
   Denver, Colorado 80202
   Tel. (303) 573-1600

HOYER LAW GROUP, PLLC
   David Lawrence Scher
   Dave@hoyerlawgroup.com
   1300 I Street N.W. Suite 400e
   Washington, DC 20005
   Tel. (202) 975-4995

*Attorneys for Plaintiff*

Dated:  January 31, 2022

## TABLE OF CONTENTS

COVER ........................................................................................................................... i

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................... iv

RELEVANT FACTS ....................................................................................................... 1

    Dates/Deadlines ........................................................................................................ 1

    Motion to Dismiss ..................................................................................................... 2

    Witness Lists ............................................................................................................. 2

    Prehearing Conference Call/Exhibits ....................................................................... 3

    Exhibits ...................................................................................................................... 4

    DAB Hearing/Decision ............................................................................................. 4

    Remand and DAB "Response" ................................................................................... 5

LEGAL STANDARD ..................................................................................................... 6

ARGUMENT .................................................................................................................. 7

I.     The DAB's Post Hoc Partial Explanation on Remand Must Be Disregarded as
       "New Reasoning" in the First Instance Rather Than Considered an "Amplified Articulation"
       of Non-Existent Prior Reasoning .......................................................................... 7

II.    The DAB's Initially-Unexplained Exclusion of the Additional Evidence File Is Not Now
       Justified By New Reasoning on Remand or Thereafter ........................................... 9

    A.     The DAB's New Explanation that Dr. Doe Submitted the Additional Evidence File
          After a Filing Deadline is Meritless. ............................................................... 9

    B.     The DAB's New Explanation That It Excluded Dr. Doe's Supplemental
          Exhibits for Lack of Jurisdiction and Relevance and Is Likewise Meritless ........ 11

        (1)    The Court Has Already Correctly Concluded Dr. Doe's Supplemental
              Evidence File Is Relevant ......................................................................... 12

        (2)    The Court Has Already Concluded That Whether the DAB Lacked
              Jurisdiction over the Collateral Proceedings Is Immaterial ..................... 14

        (3)    Defendants Cannot Now Opine on the Relevance and Materiality of Exhibits Where the DAB Did Not, and the Evidence Was Relevant and Material in Any Event ...................................................................................... 14

   C.    Defendants' After-the-Fact Reliance On the DAB's Discretion to Reject Dr. Doe's Additional Evidence File Is Misplaced. ...................................................... 15

III.   The DAB's Exclusion of the Prior Sworn Testimony Has Been Completely Ignored ......... 16

   A.    The DAB Failed to Address Its Rejection of Prior Sworn Deposition Testimony in the Response on Remand. ...................................................................... 16

   B.    Defense Counsel's Post Hoc Attempt to Overcome the Non-Existent Justification for Excluding the Prior Testimony Must Be Rejected.................... 17

IV.   The DAB's Exclusion of the Supplemental Evidence File and Prior Sworn Testimony Violated Dr. Doe's Statutory and Constitutional Rights, and the DAB's Response on Remand Fails to Establish Otherwise. .................................................................................... 19

   A.    The DAB's Decision Was Arbitrary and Capricious in Violation of
38 U.S.C. § 7462(f)(2)(A) and (C) ......................................................................... 19

   B.    The DAB's Decision Violated Dr. Doe's Due Process Rights ................................. 20

V.   Dr. Doe's Removal and the Revocation of Her Clinical Privileges Must Be Set Aside.......... 21

CONCLUSION.................................................................................................................... 22

CERTIFICATE OF SERVICE ........................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Advocates for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*,
429 F.3d 1136 (D.C. Cir. 2005) ............................................ 22

*Allied-Signal, Inc. v. U.S. Nuclear Reg. Comm'n*,
988 F.2d 146 (D.C. Cir. 1993) ............................................ 22

*Armstrong v. Manzo*,
380 U.S. 545 (1965) ............................................ 6

*Atlas Copco, Inc. v. EPA*,
642 F.2d 458 (D.C. Cir. 1979) ............................................ 19

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys.*,
419 U.S. 281 (1974) ............................................ 20

*Butte Cty v. Hogen*,
613 F.3d 190 (D.C. Cir. 2010) ............................................ 12

*Camp v. Pitts*,
411 U.S. 138 (1973) ............................................ 7

*Carnation Co., v. Sec'y of Labor*,
641 F.2d 801 (9th Cir. 1981) ............................................ 20

*Clarke Health Care Products, Inc. v. United States*,
152 Fed.Cl. 570 (Fed. Cl. 2021) ............................................ 21

*Cleveland Bd. of Ed. v. Loudermill*,
470 U.S. 532 (1985) ............................................ 6

*Dep't of Homeland Sec. v. Regents of Univ. of Cal.*,
140 S.Ct. 1891 (2020) ............................................ Passim

*El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health & Human Servs*,
396 F.3d 1265 (D.C. Cir. 2005) ............................................ 15

*Food Mktg. Inst. v. ICC*,
587 F.2d 1285 (D.C. Cir. 1978) ............................................ 8, 11, 14, 17

*Goldberg v. Kelly*,
397 U.S. 254 (1970) ............................................ 20-21

*Greater Bos. Television Corp. v. FCC*,
444 F.2d 841 (D.C. Cir. 1970) ............................................ 9, 15

*Greene v. McElroy,*
360 U.S. 474 (1959) ...................................................................................20, 21

*Greyhound Corp. v. ICC,*
668 F.2d 1354 (D.C. Cir. 1981) ...............................................................22

*Harmon v. Thornburgh,*
878 F.2d 484 (D.C. Cir. 1989) .................................................................21

*Ill. Pub..Telecomm Ass'n v. FCC,*
123 F.3d 693 (D.C. Cir. 1997) .................................................................22

*Lakeland Bus Lines, Inc. v. NLRB,*
347 F.3d 955 (D.C. Cir. 2003) ...........................................................15, 20

*Marshall v. Lansing,*
839 F.2d 933 (3d Cir. 1988) .....................................................................22

*Mason v. Dep't of the Navy,*
70 M.S.P.R. 584 (MSPB 1996) ................................................................21

*Matthews v. Dist. of Columbia,*
675 F. Supp.2d (180 (D.D.C. 2009) ..........................................................6

*Matthews v. Eldridge,*
424 U.S. 319 (1976) ....................................................................................6

*Michigan v. EPA,*
576 U.S. 743 (2015) ....................................................................................7

*Morall v. DEA,*
412 F.3d 165 (D.C. Cir. 2005) .................................................................15

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
463 U.S. 29 (1983) ...............................................................................11, 14

*Muwekma Ohlone Tribe v. Salazar,*
708 F.3d 209 (D.C. Cir. 2013) ...................................................................8

*NAACP v. Trump,*
315 F.Supp.3d 457 (D.D.C. 2018) .................................................8, 9, 11, 21

*Pension Benefit Guar. Corp. v. LTV Corp.,*
496 U.S. 633 (1990) ....................................................................................7

*Pub. Citizen, Inc. v. FAA*,
988 F.2d 186 (D.C. Cir. 1993) ........................................................................... 19

*Pub. Serv. Comm'n of Ky. v. FERC*,
397 F.3d 1004 (D.C. Cir. 2005) ......................................................................... 20

*Robinson v. NTSB*,
 28 F.3d 210 (D.C. Cir. 1994) ............................................................................ 15

*SEC v. Chenery Corp.*,
332 U.S. 194 (1947) ............................................................................................ 7

*Sierra Club v. Mainella*,
459 F.Supp.2d 76 (D.D.C. 2006) ......................................................................... 7

*Stone v. FDIC*,
179 F. 3d 1368 (Fed. Cir. 1999) .......................................................................... 7

**Constitution**

U.S. Const, amend. V .......................................................................................... 6

**Statutes**

38 U.S.C. § 556 .................................................................................................. 15

38 U.S.C. § 7462 ......................................................................... 6, 19, 20, 21, 23

**Rules**

Fed.R.Civ.P. 6  .................................................................................................... 2

Fed.R.Civ.P. 56  .................................................................................................. 7

Fed.R.Evid. 613 ........................................................................................... 14, 18

Fed.R.Evid. 804........................................................................................... 14, 18

In September 2021 this Court issued a Memorandum Opinion on the parties' initial cross-motions for summary judgment. The Court found that the failure of Defendant Disciplinary Appeals Board ("DAB") "to explain its evidentiary decisions [exclu]ding [Dr.] Doe's supplemental exhibits **and** introduction of prior sworn testimony require[d] remand ...." Mem. Op. at 14 (emphasis added). The Court ordered that "On remand, the DAB may provide an explanation for its decision to exclude [Dr.] Doe's supplemental evidence **and** the prior sworn testimony here or reconsider its decision in light of any of the excluded evidence it may now choose to admit." *Id.* at 27 (emphasis added).

Over a month later, rather than admitting and considering Dr. Doe's supplemental evidence and the prior sworn testimony as authorized by the Court, the DAB improperly offered a single paragraph setting forth *for the first time* a purported explanation relating to its decision to exclude the former. First, the concocted-completely-after-the-fact rationalization falsely asserted that "all exhibits, motions and requests were due ... by October 7, 2019" but Dr. Doe's supplemental evidence file was submitted after that supposed deadline. Then, it asserted that many of those documents were from another case and irrelevant to the DAB proceeding – a position previously expressly rejected by this Court. Finally, the DAB failed to even address its exclusion of the prior sworn testimony.

Taken together, the DAB's improper former baseless explanations and latter complete failure to respond necessitate denial of its summary judgment motion and the granting of Dr. Doe's.

**RELEVANT FACTS**

**<u>Dates/Deadlines</u>**

1.      June 25, 2019 communications from the DAB chairperson notified Defendant ECHS (a/k/a "the Agency") and Plaintiff Dr. Doe of the various procedural matters governing the DAB process and hearing. *See* AR 473-75, 512-14.

      a.      In pertinent part, the communications specifically provided that:

            i.      "[A]ny ***pre-hearing motions or other requests*** ... must be received ... no later than <u>Monday, October 7, 2019</u>. Responses to motions must be received ... no later than by

Monday, October 14, 2019." AR 474 and 513, ¶ 4.d (emphasis added, underscore in original); and

          ii.      A list of witnesses "must be received not later than <u>Wednesday, October 9, 2019</u>.... Objections to any witnesses must be received ... no later than <u>Monday, October 14, 2019</u>." *Id.*, ¶ 4.e (underscore in original).

        b.      The term "exhibit(s)" was nowhere mentioned. *See* AR 473-75, 512-14.[1]

## Motion to Dismiss

2.      On October 7, 2019, Dr. Doe timely submitted a "Motion to Dismiss Charge 1, Specification 8." AR 479-89*; see* AR 369.

3.      On October 23, 2019, ECHS belatedly filed the "Agency's Response to Appellant's Motion to Dismiss Charge 1, Specification 8." AR 533-83*; see* AR 397, 636.

## Witness Lists

4.      On October 9, 2019: ECHS timely submitted the "Agency's Notice of Proposed Witnesses" to the DAB, listing 35 proposed witnesses, AR 490-97, *see* AR 381; and Dr. Doe timely submitted her "Proposed Witness List with Proffer of Testimony" to the DAB, listing 10 proposed witnesses, AR 498-99, *see* AR 377.

5.      On October 15, 2019, after the Columbus Day holiday (*see* Fed.R.Civ.P. 6(a)(6)), Dr. Doe timely filed her "Objection to Numerous Agency Proposed Witnesses." AR 504-28; *see* AR 383.

6.      Despite the June 25, 2019 communications requiring that witness lists be received by October 9, 2019, and objections to witnesses be received by October 14, 2019, the below events transpired over the course of the following 1½ months.

7.      On October 25, 2019: ECHS belatedly filed the "Agency's Response to Appellant's Objection to Numerous Agency Proposed Witnesses," AR 584-97, *see* AR 403; and the DAB issued a

---

[1] The mention in the DAB's below-discussed response to the Court's remand order (see Relevant Facts ¶¶ 21, 22.a) of an October 7, 2019 communication about supposed dates and deadlines merely made reference to "attached … notification and deadlines" without specifics. *See* AR 371, 374-75.

written ruling limiting the Agency to 6 character witnesses, AR 421, 422-23.

8. On November 1, 2019, ECHS submitted the "Agency's Amended Notice of Proposed Witnesses" to the DAB, listing 19 proposed witnesses. AR599-603; *see* AR 420.

9. In a (subsequently summarized) November 1, 2019 pre-hearing conference call, AR 634-39, the DAB approved 16 named hearing witnesses for ECHS and 10 for Dr. Doe. *Id.* at 635. It also directed the parties to file further amended witness lists by November 6, 2019. *Id.*

10. On November 6, 2019:

a. ECHS filed the "Agency's Second Amended Notice of Proposed Witnesses" with the DAB, listing 17 proposed witnesses. AR 607-13.

b. Dr. Doe filed with the DAB "Appellant's Amended Witness List," again listing 10 proposed witnesses, AR 614-17, and "Appellant's Objection to Certain Aspects of Agency's Second Amended List of Proposed Witnesses," AR 618-20.

11. On November 22, 2019, Dr. Doe filed "Appellant's Second Amended Witness List" with the DAB, once more listing 10 proposed witnesses. AR 641-44.

12. On November 29, 2019, ECHS filed the "Agency's Third Amended Notice of Proposed Witnesses and Exhibits" with the DAB, listing 13 witnesses. AR 662-66.

13. As detailed above, subsequent to the supposed October 9, 2019 "deadline" for submitting witness lists, the parties proceeded to file *five* sets of amended witness lists. Not a single witness was rejected by the DAB on the basis of tardy or untimely filing.

**Prehearing Conference Call/Exhibits**

14. Included in the November 20, 2019 subsequently-memorialized summary of the November 1, 2019 pre-hearing conference call were specific references to 5 Appellant's exhibits (AP 1-5) and 4 Agency exhibits (AG 1-4). *See* AR 636-37.

a. Among the Appellant's referenced exhibits were included references to 7 sub-exhibits, *see* AR 636, the latest of which were dated November 6, 2019, *id.* at 636 (AP 4, "Appellant's

Amended Witness List") - 37 (AP 5, "Appellant's Objection to Certain Aspects of Agency's Second Amended List of Proposed Witnesses").

      b.     Among the Agency's referenced exhibits were included references to 7 sub-exhibits, *see* AR 636, the latest of which were dated October 23, 2019 (AG 2, "Agency's Response to Appellant's Motion to Dismiss Charge 1, Specification 8"), and October 25, 2019 (AG 3, "Agency's Response to Appellant's Objection to Numerous Agency Proposed Witnesses"), *id.* at 636, and November 6, 2019 (AG 4, "Agency's Second Amended Notice of Proposed Witnesses"), *id.* at 637.

      c.     There was no party objection to or DAB rejection of any of the exhibits that were dated later than October 7, 2019. *See* AR 634-39.

    15.    On November 26, 2019, the DAB issued a ruling "re-iterat[ing] that testimony from other proceedings such as MSPB hearings or other sworn depositions will not be considered." AR 649.

**Exhibits**

    16.    On November 29, 2019:

      a.     The "Agency's Third Amended Notice of Proposed Witnesses and Exhibits" filed with the DAB listed and submitted 4 new exhibits. AR 666-67; *see* AR 449.

      b.     Dr. Doe filed with the DAB "Appellant's Additional Evidence File Exhibits" consisting of a Part C and 24 additional exhibits. *See* AR 670.

      c.     ECHS filed with the DAB the "Agency's Objection to Appellant's Exhibits" asserting lack of relevance, relation to matters outside the Board's jurisdiction and already being litigated in other forums, and duplication of other materials already in the ECHS-compiled evidence file. AR 650-57. No argument was raised that those exhibits had missed any filing deadline. *See id.*

**DAB Hearing/Decision**

    17.    During the December 2019 hearing, the DAB chairperson stated on the record:

      a.     Regarding the parties' additional proffered exhibits, "None of those additional records will be considered ...." AR 982.

      b.      After Dr. Doe's counsel made a record that exclusion of her additional evidence file exhibits precluded her from presenting exculpatory evidence in her defense, "Noted." AR 983.

      c.      To Dr. Doe's counsel during witness examination, "you're not allowed to ask ... about anything that does not exist in the [ECHS] evidence file." AR 1901.

18.      On January 15, 2020, the DAB issued its decision in the form of a "Board Action." AR 965-71. Regarding documentary evidence, the DAB only considered and relied upon materials from the pre-existing ECHS evidence file. *See id.*

19.      On March 9, 2020, "After careful consideration of all the evidence,[2] including the [DAB's] analysis and findings," Defendant Lieberman made the decision to approve and execute the DAB's action. AR 972.

**Remand and DAB "Response"**

20.      On September 22, 2021, the Court remanded the case to the DAB so it could explain its exclusions of Dr. Doe's supplemental evidence ***and*** the prior sworn testimony or reconsider its decision. Mem. Op. at 14, 27.

21.      On October 25, 2021, the DAB produced a partial purported "response" to the remand order. *See* Ex. 1 to Plaintiff's Reply to Defendant DAB's "Explanation" on Remand.

      a.      There it expressly acknowledged that "[o]n remand, the DAB is to provide an explanation for its decision to exclude supplemental evidence ***and the prior sworn testimony*** here or reconsider its decision" adverse to Dr. Doe. *Id.* 1st ¶ (emphasis added).

      b.      Despite that express acknowledgement, the DAB went on to state that the response only "***included [its] reasons for excluding the supplemental evidence,***" *id.* (emphasis added), and made no reference to the prior sworn testimony, *see id.*

---

[2] The "evidence" referred to consisted only of live witness testimony at the DAB hearing and documents from the ECHS-compiled evidence file. Neither Dr. Doe's "Additional Evidence File Exhibits" nor any prior sworn testimony was included or considered.

22.     The "response" then provided one substantive paragraph, addressing only the first portion of the Court's two-pronged remand order.

      a.     The DAB for the first time claimed that the supplemental evidence file was excluded because it was submitted after a supposed deadline for "all ***exhibits***, motions and requests" of October 7, 2019. *Id.* 2d ¶ (emphasis added).

      b.     The DAB then attempted to buttress that exclusion by asserting that "many of the documents were related to a discrimination-[type] case … outside the Board's jurisdiction and scope," thus were "not relevant to the case and charges [*sic*] before the DAB and were therefore excluded from the proceedings." *Id.*

23.     The DAB's response failed to even address – much less offer any explanation for, let alone reconsider – its exclusion of prior sworn testimony or its overall decision adverse to Dr. Doe.

## LEGAL STANDARD

Dr. Doe brought this action against Defendants seeking reversal of the DAB's decision upholding her removal from federal employment with, and revocation of her clinical privileges by, Defendant Eastern Colorado Healthcare System ("ECHS"). She seeks reversal of the DAB's decision on statutory grounds, pursuant to 38 U.S.C. § 7462(f)(2), and Constitutional due process grounds.

Under 38 U.S.C. § 7462(f)(2), an agency action must be set aside it if it is, among other things, arbitrary and capricious or unsupported by substantial evidence. Moreover, "[t]he Fifth Amendment of the Constitution prohibits the deprivation of property without the due process of law." *Matthews v. Dist. of Columbia*, 675 F.Supp.2d 180, 185 (D.D.C. 2009) (citing U.S. Const. amend. V). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The individual in question is entitled to that right irrespective of the degree to which its exercise may or may not have influenced the government's action. *See Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 544 (1985). An adverse action that violates such right cannot stand.

*See Stone v. FDIC*, 179 F.3d 1368, 1377 (Fed. Cir. 1999).

Under Fed.R.Civ.P. 56(c), "summary judgment is appropriate when the pleadings and the evidence demonstrate 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Sierra Club v. Mainella*, 459 F.Supp.2d 76, 89 (D.D.C. 2006). Summary judgment here "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the [] standard of review" under 38 U.S.C. § 7462(f)(2) and the Constitution. *Id.* at 90.

## ARGUMENT

**I.    The DAB's Post Hoc Partial Explanation on Remand Must Be Disregarded as "New Reasoning" in the First Instance Rather Than Considered an "Amplified Articulation" of Non-Existent Prior Reasoning.**

"It is a 'foundational principle of administrative law' that judicial review of agency action is limited to '***the grounds that the agency invoked when it took the action***.' " *Dep't of Homeland Sec. ("DHS") v. Regents of Univ. of Cal.*, 140 S.Ct. 1891, 1907 (2020) (emphasis added) (quoting *Michigan v. EPA*, 576 U.S. 743, 750 (2015)). If those grounds were inadequate, a reviewing court may remand to the agency and offer two alternatives. One, the agency may provide "a fuller explanation of [its] reasoning *at the time of the agency action*." *Id.* at 1907-08 (emphasis in original) (quoting *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654 (1990)). Or two, the agency may "deal with the problem afresh" by taking new action. *Id.* at 1908 (quoting *SEC v. Chenery Corp*., 332 U.S. 194, 201 (1947)). Those were the options presented here upon remand of the case to the DAB. Mem. Op. at 27.

But an agency's opportunity to explain its reasoning at the time it took the action in question has important limitations. *DHS*, 140 S.Ct. at 1907. "When an agency's initial explanation 'indicate[s] the determinative reason for the final action taken,' the agency may elaborate later on that reason (or reasons) ***but may not provide new ones***." *Id.* (emphasis added) (quoting *Camp v. Pitts*, 411 U.S. 138, 143 (1973)). "[W]hen faced with an explanation offered for the first time on remand, a court must determine whether it is an 'amplified articulation' of the agency's prior reasoning (which must be

considered), or instead '*a new reason for why the agency __could__ have' taken the action* (which *must be disregarded*)." *NAACP v. Trump*, 315 F.Supp.3d 457, 466 (D.D.C. 2018) (citations omitted) (emphasis added) (underline in original).,

"Considering only contemporaneous explanations for agency action [] instills confidence that the reasons given are not simply 'convenient litigating position[s].' " *DHS*, 140 S.Ct. at 1909. "Permitting agencies to invoke belated justifications, on the other hand, can upset 'the orderly functioning of the process of review,' forcing both litigants and courts to chase a moving target." *Id.* Further, "[t]he functional reasons for requiring contemporaneous explanations apply with equal force regardless whether post hoc justifications are raised in court by those appearing on behalf of the agency *or by agency officials themselves*." *Id.* (emphasis added); *Food Mktg. Inst. v. ICC*, 587 F.2d 1285, 1290 (D.C. Cir. 1978) ("Post-hoc rationalizations by the agency on remand are no more permissible than are such arguments when raised by appellate counsel during judicial review."); *Muwekma Ohlone Tribe v. Salazar*, 708 F.3d 209, 217 n.8 (D.C. Cir. 2013) (agency's explanation on remand "must be more than a barren exercise of supplying reasons to support a pre-ordained result").

Here, it is established beyond dispute that the DAB failed to invoke *any reason(s)* at the time it excluded Dr. Doe's supplemental evidence file and her use of prior sworn testimony. *See* Mem. Op. at 5 ("The record is silent as to the reason for this exclusion" [citing AR 649, 982, 1901]), 14 ("The Court finds that the DAB[] fail[ed] to explain its evidentiary decisions regarding Doe's supplemental exhibits and introduction of prior sworn testimony"), 18 ("The agency does not contest that the DAB offered no reason for the exclusion of Doe's supplemental evidence. And the Court's own reading of the record reveals none."), 19 ("the DAB failed to give any explanation for the exclusion of Doe's supplemental evidence file or the prior sworn testimony").

Consequently, on remand the DAB necessarily could not provide an "amplified articulation" of its prior determinative reasoning because no such prior reasons had been given. Instead, the justification advanced on remand for exclusion of the supplemental evidence file constitutes an attempt

to provide new reasons in the first instance for why the DAB could have taken that action and, as such, must be disregarded.  *Trump*, 315 F.Supp.3d at 466. As a result, the DAB's only actual option on remand was to admit the previously excluded supplemental evidence file and prior sworn testimony (along with corresponding testimony and cross-examination), consider matters afresh and take new agency action. *See DHS*, 140 S.Ct. at 1908. "Requiring a new decision before considering new reasons promotes 'agency accountability' by ensuring that parties and the public can respond fully and in a timely manner to an agency's exercise of authority." *Id.* at 1909 (internal citation omitted). [3]

Rather than doing so, however, the DAB offered only impermissible new, post-hoc rationalizations for excluding the supplemental evidence while failing to address the prior sworn testimony at all. As a result, the DAB's exclusion of such materials continues to "cross the line from the tolerably terse to the intolerably mute." Mem. Op. at 19 (quoting *Greater Bos. Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970)). [4]

## II. The DAB's Initially-Unexplained Exclusion of the Additional Evidence File Is Not Now Justified by New Reasoning on Remand or Thereafter.

In its response on remand, the DAB claimed that it had excluded Dr. Doe's supplemental evidence file because it was submitted after a filing deadline for exhibits and contained documents from another case outside the DAB's jurisdiction and scope which were irrelevant to the DAB proceeding. As detailed above, however, the DAB did not offer this or any other explanation at the time it made the decision to exclude the evidence file; it must be disregarded now on that basis alone.

### A.   The DAB's New Explanation that Dr. Doe Submitted the Additional Evidence File After a Filing Deadline is Meritless.

---

[3] Notably, "[a]n agency [reconsidering the issue on remand] is not limited to its prior reasons ***but must comply with the procedural requirements for new agency action***." *DHS*, 140 S.Ct. at 1908 (emphasis added). The procedural requirements for a new DAB action under these circumstances would involve a new, expanded evidence file and hearing pursuant to Part V of VA Handbook 5021. AR 109-19.

[4] Arguments II and III below are presented in the alternative, respectively, to dispute Defendants' post hoc rationalization regarding the DAB's exclusion of the supplemental evidence file and highlight their complete and utter failure to even address the DAB's exclusion of the prior sworn testimony.

The DAB's post hoc remand reasoning based on Dr. Doe's purportedly untimely submission of the additional evidence file constitutes an after-the-fact contrivance to support Defendants' current litigation position. For the reasons detailed in Plaintiff's Reply to Defendant DAB's "Explanation" on Remand (Doc. 39) at 1-3 ¶ 1.a, the missed-filing deadline rationale is false. There was no mention whatever of "exhibits" in the DAB's June 25, 2019 communications regarding "pre-hearing motions or other requests" that were to be submitted by October 7, 2019. *See* Relevant Facts ¶ 1 above. The DAB's response on remand misleadingly inserted the word "exhibits" in front of the two items ("pre-hearing motions or other requests") that were actually stated in those communications.

Defendants themselves now concede that the October 7, 2019 deadline expressly applied only to "motions or other requests." Nevertheless, counsel for the first time in briefing offer the following new post hoc rationalizations to support the DAB's exclusion of the supplemental evidence file.

•        The DAB "reasonably interpreted" and "intended" that the reference to pre-hearing requests encompass exhibits beyond those already included in the ECHS-compiled evidence file.

•        "As far as the Board was concerned," the time for Dr. Doe to supplement the evidence file was during the pre-hearing conference or at least well in advance of the DAB hearing. (This of course inherently conflicts with the DAB's remand response that exhibits were due October 7, 2019.)

•        At the time the November 1, 2019 conference was subsequently summarized on November 20, "the Board considered the parties' witness lists and exhibits to be finalized." (This too conflicts with the DAB's remand response assertion that exhibits were due October 7. It is also belied by the fact that the parties – including the Agency itself – continued without repercussion to file amended witness lists as late as November 22 (Dr. Doe) and 29 (ECHS).  Relevant Facts ¶¶ 11-12.)

•        Dr. Doe's filing of the supplemental exhibits days before the hearing presented an unreasonable and unnecessary administrative burden because the DAB members had to travel over the weekend from California, Alabama, and Minnesota to the hearing location in Colorado.

There is absolutely *no support whatsoever* in the record for any of these contentions. Nor has the DAB ever articulated any of them – whether at the time or in its response on remand – as a basis for excluding the supplemental exhibits. They are simply "post hoc justifications … raised in court by those appearing for the agency … [which] cannot serve as a sufficient predicate for agency action." *DHS*, 140 S.Ct. at 1909 (citations omitted). Such post hoc arguments raised by counsel on judicial review are impermissible. *Food Mktg. Inst.*, 587 F.2d at 1290. Simply put, in cases like this where "the agency stated no reasons at all" for its rejection, "courts may not accept appellate counsel's post hoc rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) (internal citation omitted).

Undeterred, however, counsel pull out all the stops by raising a "Hail Mary" policy argument. They urge that the DAB appropriately rejected the supplemental evidence because admitting it would turn DAB proceedings into a free-for-all where a litigant could effectively restart her proceedings based on tranches of newly submitted records. They then speculate that the DAB may have been "reasonably concerned that an unyielding avalanche of information might overwhelm [its] ability to reach a final decision." Such a new reason for why the DAB ***could*** have taken the action to exclude the supplemental evidence must be disregarded. *Trump*, 315 F.Supp.3d at 466. Moreover, as a practical matter, the DAB's admission and consideration of the additional exhibits (and related testimony and cross-examination) would have ensured a fair, even-handed hearing and, likely, an altogether different result.

**B.** **The DAB's New Explanation That It Excluded Dr. Doe's Supplemental Exhibits for Lack of Jurisdiction and Relevance Is Likewise Meritless.**

On remand, the DAB offered another new rationale for excluding Dr. Doe's supplemental evidence file. It claimed that many (albeit unspecified) documents came from another case which was outside the DAB's jurisdiction and scope and were irrelevant to the DAB proceeding. *See* Relevant Facts ¶ 22.b above. As with the filing deadline argument, the DAB did not offer this or any other

explanation at the time it made the decision to exclude the evidence file, so it must now be disregarded.[5]

Generally, this reasoning amounts to "throwing the baby out with the bathwater": because *some* of the documents were irrelevant, *all* of them should be excluded – even the ones the Agency didn't object to as outside the DAB's jurisdiction or irrelevant when they were submitted. *See* AR 650-56. More specifically, the DAB's assertion regarding lack of jurisdiction and irrelevance is merely conclusory in nature. It fails to articulate a satisfactory explanation for the DAB's action in excluding the exhibits, and so does not constitute "reasoning" in any event. *See Butte Cty v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010). For the following actual reasons, the DAB's continued blatant "refusal to consider evidence bearing on the issue before it constitutes arbitrary agency action ...." *Id.*

### (1)   The Court Has Already Correctly Concluded Dr. Doe's Supplemental Evidence File Is Relevant.

This Court has already determined that the documents alluded to by the DAB in this regard are relevant to the DAB proceeding.

- Documents from Dr. Doe's EEO and MSPB cases "are ***relevant*** here ... because [she] attempted to introduce evidence about or from these collateral proceedings to show bias or improper motivation … of witnesses who testified before the DAB."[6] Mem. Op. at 6-7 (emphasis added).

- "[C]ertain exhibits [Dr. Doe] wished to offer into evidence or use to impeach witnesses called at the DAB hearing[7] ... additional evidence, amounting to some 280 pages, included documents

---

[5] Defendants' assert that *the Agency* addressed the issue of the scope of the DAB's jurisdiction in a written objection filed on November 29, 2019 regarding the exhibits offered by Dr. Doe. That has no bearing whatsoever on whether the DAB's exclusion of Dr. Doe's supplemental exhibits was appropriate. All that matters is *the DAB's* stated rationale at the time, which was nothing.

[6] *See, e.g.*, **Tab 40**, AR 815-21 (establishing bias against Dr. Doe by adverse witness Black, who was not her supervisor at the time of giving her an unfavorable performance appraisal (contrary to the one given by her actual supervisor) in order to avoid paying her a performance bonus which would have been at odds with attempting to terminate her); **Tab 43**, AR 872-80 (involving a complaint Dr. Doe lodged against adverse witness Barnett, which gave rise to his bias against her); **Tab 44,** AR 881-93 (evidencing Dr. Doe's exposure of adverse witness Beck in a deceitful call scheduling system, giving rise to his bias against her).

[7] In addition to n.6, s*ee, e.g.,* **Tab 42**, 858-71 (contradicting DAB testimony by adverse witness Torres).

purportedly *relevant* to [her] claim that dysfunction and hostility were widespread in the hospital's anesthesiology department[8] ...." *Id.* at 16 (emphasis added).

•    Other such exhibits included "emails from DAB witnesses in which they discuss Doe and, she claims, exhibit bias against her; various positive evaluations of Doe's performance[9]; and an assortment of other evidence Doe claims was inconsistent either with specific testimony offered by witnesses at the hearing or the penalty imposed."[10] *Id.* at 16-17. "With respect to this material, the Court agrees with Doe … the materials were at least arguably *relevant* …." *Id.* at 17 (emphasis added).

•    In sum, "[a]s to *relevance,* portions of the supplemental evidence file appear to speak to each of the specifications underlying the charge." *Id.* (emphasis added).  The Court then went on to cite examples. The excluded evidence could have been used by Dr. Doe to attack the testimony of Dr. Beck, which the DAB relied on in upholding Specification 8, and the testimony of Drs. Black and Barnett, which the DAB relied on in upholding Specifications 1 and 8. *See id.* at 17-18; *see also* AR 967 (citing Black re Specifications 4 and 5). The excluded evidence also included favorable peer references, prior performance reviews and case reviews finding Dr. Doe met the standard of care,

---

[8] *See, e.g.,* **Tab 32**, AR 726-27 (establishing that employees other than Dr. Doe were responsible for dysfunction in Anesthesiology Department), **Tab 47**, AR 943-48 (OMI report documenting same).

[9] *See, e.g.,* **Tab 27**, AR 694-715 (favorable recommendations of Dr. Doe based on excellent job performance prior to ECHS); **Tab 39**, AR 795-814 (Dr. Doe's routinely favorable performance evaluations from the start of her ECHS employment through 2017); **Tab 41**, AR 822-57 (external reviewer evaluations determining Dr. Doe met standard of care in all cases reviewed, including cases later relied on by DAB in upholding specifications and penalty determination); **Tab 45**, AR 894-98 (positive letters of reference from ECHS staff regarding Dr. Doe's performance and interactions).

[10] *See, e.g.,* **Tab 32** (establishing that employees other than Dr. Doe were responsible for dysfunction in Anesthesiology Department), **Tab 47** (report by Office of Medical Inspector documenting same).

[10] *See, e.g.,* **Tabs 33 and 34**, AR 728-33 (containing emails evidencing bias against Dr. Doe by then-Chief of Staff Mangione, who later recommended revoking her clinical privileges and terminating her); **Tab 37**, AR 749-91 (establishing that ECHS began developing evidence file against Dr. Doe three months before suspending her, contradicting subsequent basis for termination that she presented imminent threat to patient health and safety); **Tab 38**, AR792-94 (evidencing bias against Dr. Doe by then-Deputy Chief of Staff Dillon, who was soliciting complaints to construct case against her).

including in cases charged in the specifications – all matters potentially relevant to the Charge, Specifications and penalty factors. *See id.* at 18 *see also* n.9 above. And, the credibility of Dr. Black and CRNA Fredriksson, upon whose testimony the DAB relied in sustaining the charge, could have been attacked through use of their prior sworn deposition testimony. *See id; see also* § III.B below.

### (2)   The Court Has Already Concluded That Whether the DAB Lacked Jurisdiction Over the Collateral Proceedings Is Immaterial.

Regarding the claimed lack of jurisdiction, the Court has correctly noted that "whether the DAB lacked jurisdiction over Doe's collateral proceedings is a separate question from whether evidence developed during those proceedings was relevant and otherwise admissible in the DAB hearing." Mem. Op. at 18-19 n.8. Dr. Doe did not offer any of the exhibits contained in her supplemental evidence file in order to have the DAB decide her discrimination or whistleblower claims. Rather, she offered them for other admissible reasons relating to the Charge, Specifications and penalty at issue in the DAB proceeding. As this Court went on to point out, "[c]ourts routinely admit evidence from proceedings in other jurisdictions for the purpose of demonstrating such things as witness bias and testimonial inconsistency." *Id.* (citing Fed.R.Evid. 613). As detailed immediately above, it has already determined that Dr. Doe's additional evidence is relevant to the DAB proceeding.

### (3)   Defendants Cannot Now Opine on the Relevance and Materiality of Exhibits Where the DAB Did Not, and the Evidence Was Relevant and Material in Any Event.

Defendants devote six pages of their opposition brief to explaining why they believe specific exhibits in Dr. Doe's supplemental evidence file were immaterial and irrelevant. Such belated arguments of counsel on judicial review are impermissible, may not be accepted by the Court and constitute an insufficient predicate for the DAB's action. *See, e.g., Food Mktg. Inst.*, 587 F.2d at 1290; *State Farm*, 463 U.S. at 50; *DHS*, 140 S.Ct. at 1909.

Despite all the foregoing, Defendants maintain that exclusion of the supplemental evidence was not reversable error because Dr. Doe was not prejudiced by it. That assertion is pure speculation.

Contrary to Defendants' contention, as supported by the details above and as recognized by the Court, Dr. Doe's proffered but excluded exhibits were and are relevant to contest and refute the legitimacy of the allegations on which the Charge, Specifications and – most importantly – penalty were based. Had they been admitted and considered, along with accompanying testimony and cross-examination, the result here in all likelihood would have been completely different.

### C. Defendants' After-the-Fact Reliance on the DAB's Discretion to Reject Dr. Doe's Additional Evidence File Is Misplaced.

Defendants urge that the DAB was within reason to exercise its discretion to reject Dr. Doe's evidence file because of an agency's inherent power to control its own docket. Of course agencies generally enjoy discretion regarding what evidence they may admit or exclude from their proceedings. Indeed, this Court has previously acknowledged that discretion. *See* Mem. Op. at 14-15 (quoting 5 U.S.C. § 556(d) and cases). The DAB's discretion to control its docket, however, does not excuse it from providing its reasoning for the discretionary decision it makes. *Greater Bos. Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970) ("[A]t least as long as the government uses the forms of adjudication … as the most feasible guarantor of neutral and acceptable selection, reasoned decision-making remains a requirement of our law.")

As this Court noted, an agency's discretion also is limited in that it should generally consider admitting relevant evidence unless it violates policy or procedure. Mem. Op. at 15. The notion that an agency should admit relevant evidence is confirmed by cases cited by the Court holding that agency action may be deemed arbitrary and capricious when, as here, the agency failed to address relevant evidence before it or did not consider contradictory evidence. *Id.* (citing *Morall v. DEA*, 412 F.3d 165, 178 (D.C. Cir. 2005); *El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1276-78 (D.C. Cir. 2005); *Lakeland Bus Lines, Inc. v. NLRB*, 347 F.3d 955, 962 (D.C. Cir. 2003); *Robinson v. NTSB*, 28 F.3d 210, 215-16 (D.C. Cir. 1994)). That is precisely what the DAB did here by rejecting Dr. Doe's supplemental evidence file, and its after-the-fact justifications do

not support a contrary conclusion.

### III.   The DAB's Exclusion of the Prior Sworn Testimony Has Been Completely Ignored.

#### A.   In Its Response on Remand the DAB Failed to Address Its Exclusion of Prior Sworn Testimony from Other Proceedings.

The Court made clear that its remand directive applied to the DAB's unexplained decisions to exclude both Dr. Doe's additional evidence file exhibits and her use of prior sworn testimony from other proceedings for impeachment purposes. *See, e.g.,* Mem. Op. at 14 ("Doe objects to the DAB's decisions to exclude certain supplemental evidence [and] preclude her from impeaching witnesses with prior sworn testimony from collateral proceedings .... The Court finds that the DAB's failure to explain its evidentiary decisions regarding Doe's supplemental exhibits ***and introduction of prior sworn testimony*** requires remand") (emphasis added).

Further, it made clear that on remand the DAB was to either explain the exclusions or reconsider them and its overall decision adverse to Dr. Doe. See Mem. Op. at 19 ("The Court will thus remand this matter to the DAB to either explain these exclusions or reconsider them in light of the Court's ruling."), 27 ("On remand, the DAB may provide an explanation for its decision to exclude Doe's supplemental evidence ***and the prior sworn testimony*** here, or reconsider its decision in light of any of the excluded evidence it may now choose to admit.") (emphasis added).

The DAB itself expressly acknowledged that the remand ordered it to explain its decisions both to exclude the supplemental evidence file ***and*** the prior sworn testimony or reconsider its overall decision adverse to Dr. Doe. Relevant Facts ¶ 21.a above. Yet, it concededly addressed only exclusion of the supplemental evidence and, without providing any rationale whatever, ignored its exclusion of the prior sworn testimony. *Id.* ¶ 21.b above; *see* ¶¶ 22-23 above.

The Court has previously recognized that the prior sworn testimony of Dr. Black and CRNA Fredriksson in particular could have been used to attack their credibility, which is significant in that the DAB relied on their testimony in sustaining the charge of unprofessional conduct against Dr. Doe.

*See* Mem. Op. at 18. The DAB's attempt to sweep the subject under the rug is perhaps not surprising, inasmuch as the Agency itself conceded prior to the hearing that such testimony could be used for impeachment purposes. *See, e.g.*, AR 621 ("offer[ing] … deposition testimony [] at the hearing … for impeachment purposes … would be permissible use").

Having still failed to offer any purported justification for excluding the prior sworn testimony, the DAB's decision to do so remains violative of established principals of agency adjudication. *See* Mem. Op. at 17. The DAB's blatant disregard of this Court's explicit directive concerning prior sworn testimony necessitates that the overall decision adverse to Dr. Doe now be vacated based on the insufficiency of the evidence. *See generally id.* at 1, 2, 7, 10, 19, 25, 26 n.12.

### B.    Defense Counsel's Post Hoc Attempt to Overcome the Non-Existent Justification for Excluding the Prior Testimony Must Be Rejected.

As detailed above, in its remand response the DAB completely disregarded its exclusion of the prior sworn deposition testimony. Defendants now attempt to remedy that omission by non-contemporaneously addressing the subject through counsel on judicial review via their brief. Doing so is impermissible on its face. *See DHS*, 140 S.Ct. at 1909 ("[t]he functional reasons for requiring contemporaneous explanations apply ... regardless whether post hoc justifications are raised in court by those appearing on behalf of the agency"); *Food Mktg. Inst.*, 587 F.2d at 1290 (post hoc rationalizations are not permissible when raised by appellate counsel during judicial review).

Defendants primarily seek to do so by highlighting Dr. Doe's objection to the VA's attempt to use prior sworn testimony in an effort to prove its own case. But the attempted comparison is one of apples and oranges. The VA sought to introduce deposition transcripts *in lieu of live testimony* by witnesses who might not appear at the hearing. *See* AR 618. Those witnesses included Mangione, Housser-Hanfelder, Frederiksson, Oliva and Todovoric who were not then employed by the VA, and Black who was. *Id.* & n.1 In contrast, Dr. Doe sought to use sworn deposition testimony for the very different purpose of impeaching the credibility of live testifying witnesses based on their prior

inconsistent statements. *See* AR 626 ¶ 1 (citing Fed.R.Evid. 613(b), 804(b)(1)).

For example, the DAB relied on vague general testimony by CRNA Sarah Fredriksson to uphold Specification 2. The panel stated Fredrikkson characterized Dr. Doe "as excitable" and that she thought Dr. Doe "took precipitous actions without due diligence or coordinating and communicating ... as joint anesthesia providers …." AR967. The DAB then noted that Fredrikkson described the interpersonal environment created by Dr. Doe as not fostering a team approach. *Id.* Then it relied on her examples of Dr. Doe seeing patients preoperatively but not communicating that fact, causing the patient to be seen a second time or only communicating information about the patient after both Dr. Doe and Fredriksson were in the room with the patient. *Id.* That hearing testimony, however, is contradicted by sworn deposition testimony Ms. Fredriksson gave in a parallel proceeding about the patient and procedure at issue in Specification 2. Specifically, she testified that she had a good and collaborative working relationship with Dr. Doe, AR 2655 (Dep. tr. 16:15-20), and that her "major discussions" with Dr. Doe usually took place in the pre-op area, AR 2658 (Dep. tr. 19:11-25).

The DAB also relied on testimony by Dr. Black to uphold numerous specifications, including Specification 8. In that regard, Dr. Black testified at the DAB hearing that a vast majority of residents had a personality conflict with Dr. Doe. AR 1027 (DAB tr. 54:13 – 55:2). Yet, during in prior deposition testimony, Dr. Black acknowledged that he had only received one or two verbal complaints regarding Dr. Doe. AR 2387 (Dep. tr. 103:20-25).

Further, the DAB made its penalty determination by relying on testimony from, among others, Dr. Oliva, stating he "was concerned about returning [Dr. Doe] to duty and having to monitor her ... before allowing her to supervise residents again." AR 969, ¶ 7. This conclusion was based on testimony by Dr. Oliva during the hearing that, even with remediation, Dr. Doe's return to working with residents would negatively affect the University's relationship with the VA. (AR 1400-01). At his deposition, however, Dr. Oliva offered contradictory testimony indicating that he was open to Dr. Doe's continued work as a resident supervisor if she underwent remediation. AR 2610.

In short, the DAB relied extensively on the testimony of these witnesses in upholding the specifications and penalty. *See* AR  966-69 (22 references collectively) , Had Dr. Doe been able to confront these witnesses with their prior, inconsistent testimony, she could have undermined their credibility and discredited testimony on which ECHS' actions, and ultimately the DAB's decision, were based. Thus, the DAB deprived Dr. Doe of the right to defend herself and, so, of a fair hearing.

## IV.   The DAB's Exclusion of the Supplemental Evidence File and Prior Sworn Testimony Violated Dr. Doe's Statutory and Constitutional Rights, and the DAB's Response on Remand Fails to Establish Otherwise.

As this Court stated previously, agencies are generally under an obligation to explain why relevant evidence should not be admitted. Mem. Op. at 16. "One of the most important safeguards of the rights of litigants … in proceedings before an administrative agency vested with discretion[] is that it cannot rightly exclude from consideration facts and circumstances relevant to its inquiry which upon due consideration may be persuasive weight in the exercise of its discretion. *Id.* (quoting *Atlas Copco., Inc. v. EPA*, 642 F.2d 458, 467 (D.C. Cir. 1979). Indeed, "the requirement that agency action not be arbitrary and capricious includes a requirement that the agency adequately explain its result[.]" *Id.* (quoting *Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993). It hasn't done that here.

### A.    The DAB's Decision Was Arbitrary and Capricious in Violation of 38 U.S.C. § 7462(f)(2)(A) and (C).

As the Court already concluded, the DAB's failure to explain its rationale for excluding Dr. Doe's supplemental evidence file and prior sworn testimony violated established principles of agency adjudication. Mem. Op. at 17. On remand and in briefing the DAB has offered only impermissible *post hoc,* unsubstantiated justifications for excluding them, which must be disregarded. As a result, the DAB has not explained why such relevant evidence was not admitted here. Its failure to do so renders its exclusion of those materials arbitrary and capricious, in violation of 38 U.S.C. § 7462(f)(2)(A).

The DAB's decision also fails under the substantial evidence standard. 38 U.S.C. § 7462(f)(2)(C)**.** Specifically, substantial evidence does not exist where a decision fails to "tak[e] into

account contradictory evidence or evidence from which conflicting inferences could be drawn." *Lakeland Bus Lines*, 347 F.3d at 962. The DAB refused to take into account Dr. Doe's entire supplemental evidence file and refused to allow Dr. Doe to impeach adverse witnesses with their prior sworn testimony. These materials contained contradictory evidence and evidence from which conflicting inferences could be drawn. Therefore, by excluding this evidence, the DAB's decision violates 38 U.S.C. § 7462(f)(2)(C).

### B. The DAB's Decision Violated Dr. Doe's Due Process Rights.

In its Memorandum Opinion the Court suggested that a statutory violation may be a necessary predicate for finding a constitutional due process violation. Mem. Op. at 17 n.7. The DAB committed such statutory violations here of 38 U.S.C. §§ 7462(f)(2)(A) and (C). As a result, it also violated Dr. Doe's constitutional rights. Agencies are required to implement appropriate procedural safeguards to ensure that no deprivation of due process occurs. A party has the "right to present rebuttal evidence on all matters decided at the hearing." *Pub. Serv. Comm'n of Ky. v. FERC*, 397 F.3d 1004, 1012 (D.C. Cir. 2005). "Indeed, the Due Process Clause forbids an agency to use evidence in a way that forecloses an opportunity to offer a contrary presentation." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys.*, 419 U.S. 281, 288 n. 4 (1974); *accord Carnation Co. v. Sec'y of Labor*, 641 F.2d 801, 803 (9th Cir. 1981) (failure to permit rebuttal of adverse evidence constituted denial of due process). By excluding Dr. Doe's supplemental exhibits, the DAB denied her due process rights.

Moreover, that protection of an individual's right to present evidence in defense of a governmental action seriously injuring that individual is an immutable principle.[11] *Greene v. McElroy*, 360 U.S. 474, 496-97 (1959); *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970) ( "due process requires an

---

[11] This principle also exposes the flaw in the assertion that exclusion of the supplemental evidence was appropriate because the DAB "consistently and equally applied its rulings to both parties." Unlike the VA, Dr. Doe was defending herself against a governmental action seriously injuring her. Her constitutional right to due process in that circumstance trumps the VA's contention that exclusion of relevant and material evidence was justified because the DAB excluded evidence offered by both sides.

opportunity to confront and cross-examine adverse witnesses."). That protection is important in the case of documentary evidence but is "even more important where the evidence consists of testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy." *Greene*, 360 U.S. at 496. The Court has formalized these protections in the requirements of confrontation and cross-examination and has zealously preserved these protections all cases, including "where administrative and regulatory actions are under scrutiny." *Id.* at 496-97. Prohibiting Dr. Doe from confronting witnesses with their own prior inconsistent sworn testimony vitiated her right to offer a contrary presentation.

**V.    Dr. Doe's Removal and the Revocation of Her Clinical Privileges Must Be Set Aside.**

"[D]enial of an employee's right to fundamental due process requires reversal of an agency's action." *Mason v. Dep't of the Navy*, 70 M.S.P.R. 584, 588 (MSPB 1996). A reviewing "court ***shall*** ... hold unlawful and ***set aside*** any agency action, finding, or conclusion" that is that is arbitrary and capricious or unsupported by substantial evidence. 38 U.S.C. § 7462(f) (2)(A), (C); *see also Harmon v Thornburgh*, 878 F 2.d 484, 495 n.21 (D.C. Cir 1989) ("When a reviewing court determines that agency [actions] are unlawful, the ordinary result is that the[y] … are vacated").(*quoted in Trump*, 315 F.Supp.3d at 474 n.13).

The Court should vacate the DAB's decision in any event rather than remand it again because allowing the DAB to render a new decision here would permit the VA "to effect an end-run around the bar against *post hoc* rationalizations." *Clarke Health Care Products, Inc. v. United States*, 152 Fed.Cl. 570, 574 (Fed. Cl. 2021) ("When an agency seeks to defend its decision on grounds not previously articulated by the agency, the court generally decline[s] to consider the agency's new justification ***and affirms or reverses***." (emphasis added) (internal marks omitted)).

As established above, by providing only impermissible post-hoc rationalizations the DAB has already failed to substantiate its original decisions to exclude the supplemental evidence file and prior sworn testimony. Vacatur is now appropriate for that reason. "Unsupported agency action normally

warrants vacatur." *Advocates for Highway & Auto Safety v Fed. Motor Carrier Safety Admin*., 429 F.3d 1136, 1151 (D.C. Cir. 2005) (citing *Ill. Pub. Telecomm. Ass'n v. FCC*, 123 F.3d 693, 693 (D.C. Cir.1997)). Vacatur is further supported by "the seriousness of the … deficiencies" here. *Allied-Signal, Inc. v. U.S. Nuclear Reg. Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993. The DAB's utter failure to articulate any reasons for initially excluding all the evidence Dr Doe sought to utilize in her defense can't possibly be cured upon another remand any more than it could be cured on the first remand.

In sum, when as here a court already has remanded a case to an agency for failure to provide an adequate explanation, and on remand the agency fails to provide a reasoned basis for its original conclusion, the reviewing court may set aside the agency's action. *Marshall v. Lansing*, 839 F.2d 933, 945 (3d Cir. 1988) (citing *Greyhound Corp. v. ICC*, 668 F.2d 1354, 1358-61 (D.C. Cir. 1981)). That is the situation here, and it should be the result here.

## CONCLUSION

At the time it rejected Dr. Doe's supplemental evidence file exhibits the DAB stated no grounds for its action. Likewise, at the time it rejected her use of prior sworn testimony for impeachment purposes it stated no grounds for that action either. Thus, on remand the DAB could not provide a "fuller explanation" of its "determinative reasons" at the time it took those actions because no such reasons had been given in the first place. Put differently, what the DAB stated on remand here was not an "amplified articulation" of its prior reasoning because no such prior reasoning had been provided.

Rather, the DAB's non-contemporaneous twin rationales on remand for excluding Dr. Doe's additional evidentiary exhibits constitute impermissible "new reasons" in the first instance which must be disregarded. And, Defendants' subsequently-asserted arguments in summary judgment briefing for excluding both the additional evidence and the prior sworn testimony are impermissible post hoc justifications raised in court on judicial review by appellate counsel which cannot serve as sufficient predicates for those actions.

This Court already gave the DAB the opportunity to reconsider its decision in light of any of

the excluded evidence it might subsequently choose to admit. The DAB could have vacated its January 2020 decision, re-opened Dr. Doe's disciplinary hearing, admitted her additional evidence file exhibits, allowed her to introduce direct testimony regarding them and to use them on cross-examination, and allowed her to use prior sworn deposition testimony for impeachment purposes. The DAB should then have considered afresh the Specifications, Charge and any penalty, and issued an entirely new decision. None of that happened here.

Instead, on remand, the DAB delivered a single substantive paragraph advancing two previously unstated and unsupported justifications for its exclusion of the additional evidence file exhibits. It failed to even address its prohibition on Dr. Doe's use of the prior sworn testimony for impeachment purposes. Having three times – initially, on remand and in briefing – failed to offer an adequate explanation for its exclusion of the additional evidence and the prior sworn testimony, the DAB's action was arbitrary and capricious and must be set aside under 38 U.S.C. §§ 7462(f)(2).

But the DAB's actions also violated Dr. Doe's fundamental right to due process. By excluding the additional evidence file, the DAB deprived her of the right present rebuttal evidence on all matters decided at the hearing. By precluding her for using the prior sworn testimony, the DAB deprived her of the right to make a contrary presentation through confrontation and cross-examination of adverse witnesses. The DAB's constitutionally infirm action cannot stand.

In brief, the Court afforded the DAB a second chance to get it right, but the DAB fumbled the ball. At this point its decision must be vacated.

DATED:    January 31, 2022.

                                        JONES & KELLER, P.C.
                                         *S/ T.P. McMahon*
                                            Thomas P. McMahon
                                            tmcmahon@joneskeller.com
                                            Admitted *pro hac vice*
                                            1675 Broadway, 26th Floor
                                            Denver, Colorado 80202
                                            Tel. (303) 573-1600

HOYER LAW GROUP, PLLC
 *S/ David Lawrence Scher*
David Lawrence Scher
Dave@hoyerlawgroup.com
1300 I Street N.W. Suite 400e
Washington, DC 20005
Tel. (202) 975-4995

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2022, a true and correct copy of the foregoing Dr. Doe's Reply in Support

of her Renewed Summary Judgment Motion and Response in Opposition to Defendants' Cross-Summary Judgment

Motion was electronically filed in the CM/ECF system and served via email upon the following:

MICHAEL R. SHERWIN
Acting United States Attorney
DANIEL F. VAN HORN, D.C. Bar No. 924092
Chief, Civil Division
CHRISTOPHER C. HAIR, PA Bar No. 606656
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2541
christopher.hair@usdoj.gov
Counsel for Defendants

 *s/ Renae K. Mesch*
Renae K. Mesch