UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JANE DOE, M.D.**,<br><br>        Plaintiff,<br><br>        v.<br><br>**STEVEN L. LIEBERMAN**, in his official capacity as Acting Principal Under Secretary for Health, Department of Veterans Affairs, Veterans Health Administration,<br><br>**DISCIPLINARY APPEALS BOARD**, Department of Veterans Affairs, Veterans Health Administration, and<br><br>**EASTERN COLORADO HEALTHCARE SYSTEM**, Department of Veterans Affairs, Veterans Health Administration,<br><br>Defendants. | Case No. 20-cv-2148 (CRC) |

## MEMORANDUM OPINION AND ORDER

Dr. Jane Doe was stripped of clinical privileges and removed from her position as an anesthesiologist with a VA hospital after a disciplinary hearing board found that she had engaged in several instances of unprofessional conduct. Doe challenged the board's finding in this Court. In an initial ruling, the Court remanded the case to the agency to give the board an opportunity to explain why it excluded certain evidence from Doe's hearing. Mem. Op., Sept. 22, 2021, ECF 36. In a second ruling, the Court upheld the board's explanation on remand and proceeded to find that its determinations, and Doe's resulting separation, were supported by substantial evidence and otherwise accorded with due process. Mem. Op., Aug. 11, 2022, ECF No. 54. The Court thus entered a final order granting summary judgment in favor of the VA. Order, Aug. 11, 2022, ECF No. 55.

Doe noticed an appeal and now seeks a stay of the Court's order pending its resolution. The government opposes and separately seeks to prevent Doe from continuing to proceed under a pseudonym, which the Chief Judge of this court allowed her to do at the outset of the case in 2020.  Order, Aug. 5, 2020, ECF No. 4.  Doe has followed with her own motion to maintain her pseudonym status.  Aug. 25, 2022, ECF No. 67.

The Court will deny the stay and leave determination of Doe's pseudonym status to the Court of Appeals.

I. **Stay Pending Appeal**

Staying an order pending appeal is an "extraordinary remedy" and requires the Court to consider: (1) whether the applicant will be irreparably harmed without the requested stay; (2) whether the applicant has made a strong showing of likelihood for success on the merits upon appeal; (3) whether the stay will substantially injure other parties interested in the proceeding; and (4) whether the public interest is served by a stay.  Pl.'s Mot. for Stay at 2; Defs.' Opp'n to Stay at 2; see also Friends of the Capital Crescent Trial v. Fed. Transit Admin., 263 F. Supp. 3d 144, 147 (D.D.C. 2017).  While the Court considers each factor, the risk of irreparable harm and the likelihood of success on appeal are most critical.  Friends, 263 F. Supp. 3d at 147.  The party seeking a stay bears the burden of "justifying the exercise of such an extraordinary remedy."  Id. (cleaned up).

Dr. Doe seeks a stay to prevent the VA from reporting her loss of privileges and termination in the National Practitioner Database ("NPDB").  The NPDB is a web-based repository of reports containing information on adverse actions related to health care practitioners, providers, and suppliers.  About Us, National Practitioner Data Bank (https://www.npdb.hrsa.gov/topNavigation/aboutUs.jsp).  The reports are confidential and

accessible to health care entities and medical licensing boards but are not available to the general public. Id. The stated mission of the NPDB is to "improve health care quality, protect the public, and reduce health care fraud and abuse in the U.S." Id.

The onus for reporting to the NPDB stems from federal regulations. The VA is required to report the revocation of Dr. Doe's privileges and her termination to the NPDB 38 C.F.R. § 46.4 (requiring the VA to file an "adverse action report" with the NPDB for actions that adversely affect clinical privileges); 45 C.F.R. § 60.5 (requiring reporting to the NPDB "within 30 days following the action to be reported"). The Court's summary judgment ruling passed no judgment on whether the VA must report Doe's adverse disciplinary record to the relevant oversight bodies.

This is not the first time Doe has sought to block the agency from reporting her to the NPDB. At the outset of the case in August 2020, she filed a motion for a temporary restraining order and preliminary injunction for the same purpose. Pl.'s Mot. for TRO, Aug. 17, 2020, ECF No. 5. Doe eventually withdrew her motion in exchange for the VA's agreement not to report Doe's conduct to the NPDB "until the Court decides the merits of the parties' summary judgment motions or otherwise dismisses Plaintiff's complaint." Joint Status Report, Sept. 17, 2020, ECF 14 at 2. Per that agreement, the VA plans to make a report to the NPDB on August 29th.

Against that background, the Court turns to the four stay factors.

A. Risk of Irreparable Harm

Dr. Doe asserts that she will face irreparable harm if a stay is not granted. She contends that a NPDB report would "preclude[] [her] from ever practicing medicine again" by tarnishing her otherwise exceptional record and dissuading prospective employers from hiring her. Pl.'s

3

Mot. for Stay at 3. Doe supports her position with two out-of-circuit cases finding that reporting a doctor to the NPDB could constitute irreparable harm. Walker v. Mem'l Health Sys. of East Texas, 231 F. Supp. 3d 210 (E.D. Tex. 2017); Russo v. Jones, No. 10-00125 LEK, 2010 WL 1645040, at *11 (D. Haw. Apr. 20, 2010). This Court is unconvinced.

A report to the NPDB could undoubtedly cause Doe at least some professional harm. No one contests that prospective employers in the healthcare industry would be required to query the database and consider the revocation of Doe's privileges and her termination when deciding whether to offer her a job.

But Doe overstates the harm. She acknowledges that the VA has already reported the same adverse actions to the medical licensing boards in three states where she has held licenses to practice, and that the board of one of those states (Ohio) has disclosed the adverse actions publicly. Nor does she dispute the government's assertion that, in her home state of Colorado and certain others, Doe is under an affirmative obligation to self-report final adverse actions to the state licensing board. Doe complains that the VA should never have made those reports in the first place and suggests that some potential employers wouldn't bother to query state licensing boards were she to apply for a job. Doe offers no evidence to back up these assertions. But even if they were true, the existence of these readily available reports still diminishes the harm attributable to NPDB notification.[1]

More importantly, any harm that might flow from an NPDB report would not be irreparable. If Doe goes on to win her appeal before the D.C. Circuit, the NPDB has built-in

---

[1] Doe also argues that the VA Disciplinary Appeals Board's action is not final, and therefore not reportable, because judicial review of the action remains pending. But this contention is belied by her own lawsuit. Doe sued under 38 U.S.C. § 7462(f), which authorizes judicial review of "a final order or decision of a Disciplinary Appeals Board." Accordingly, the adverse disciplinary decision here is final, even if there is ongoing judicial review.

procedures for ensuring that she does not suffer continued harm. When a disciplinary action is overturned on appeal, the reporting entity must void the report and the NPDB sends "a notification to the subject and to all queriers who received the previous version of the report within the past 3 years." U.S. Dep't of Health and Human Servs., NPDB Guidebook E-8 (2018) (offering example of voided report after being overturned by a state court). That result would eliminate the harm Doe fears.

In the interim, Doe has presented no evidence that she is currently seeking employment. To the contrary, she indicates that the nature of her specialty limits her practice to academic centers, the only one of which in Colorado is the VA facility that suspended her privileges. Pl's Reply in Supp. of Mot. For Stay at 6 n.3. And she has relinquished her licenses to practice in other states because caring for her young child limits her ability to travel. Id.[2]

Even if Doe were to reenter the job market, she has not established that an NPBD report would prevent her from obtaining employment. Nothing in the record suggests that she would lose the opportunity to explain the report to prospective employers. As she rightly emphasizes, the Board made no adverse findings about her expertise as a doctor. Rather, it found her to be a "well-trained anesthesiologist" who simply was not fit for work at the VA due to her inability to communicate effectively with her colleagues. Mem. Op., ECF No. 54 at 34-35. Doe appears to have successfully advanced that distinction in persuading Colorado regulatory authorities to forego formal disciplinary proceedings against her. Pl's Reply in Supp. of Mot. to Stay, at Ex. 3. She offers no reason why she could not present the same argument to any prospective employers.

---

[2] The government suggests that Doe actually gave up these licenses to conceal the revocation of her clinical privileges from the public. The Court takes no position on this issue.

In sum, Doe has overstated the harm that would flow from a NPDB report and has not met her burden to show that any harm would be irreparable.[3]

B. <u>Likelihood of Success on Appeal</u>

Doe contends that she is likely to succeed on appeal because the Court's summary judgment order is flawed in two main respects. Pl.'s Mot. for Stay at 3-7.

First, as part of its ruling, the Court found that Doe was not prejudiced by the VA Disciplinary Appeals Board's exclusion of supplemental evidence that she sought to admit on the eve of the hearing. Mem. Op. at 15-22. Doe claims that this finding was inconsistent with the Court's initial ruling remanding the case to the agency for an explanation of that exclusion. In justifying the remand, the Court commented that the excluded evidence was "arguably relevant." Remand Mem., Sept. 22, 2021, ECF 36 at 14-19. There is no inconsistency. The exclusion of "arguably relevant" evidence does not necessarily create prejudice. And it did not prejudice Doe here. As the Court explained after a review of the full record, Doe had an adequate opportunity to present her case to the Disciplinary Appeals Board notwithstanding the exclusions. Mem. Op., at 15-22.

Second, Doe argues that the Court improperly permitted the VA to provide what she characterizes as "post-hoc justifications" for its exclusion of her supplemental evidence, in violation of the Supreme Court's ruling in <u>DHS v. Regents of the University of California</u>, 140 S.Ct. 1891 (2020). Pl.'s Mot. for Stay at 5-7. The Court has already evaluated and rejected

---

[3] Even if Doe had shown that she would be irreparably harmed by the reporting, it does not appear that the requested stay would prevent that harm. As mentioned above, the VA's reporting obligation derives from federal regulation and is wholly separate from this Court's ruling. As a result, staying the summary judgment order would not enjoin the agency from reporting the adverse action. While Doe could have sought an injunction to obtain the requested relief, the Court may well have lost jurisdiction to grant injunctive relief with the noticing of Doe's appeal. The parties did not brief this jurisdictional question.

Doe's reading of that case as applied to evidentiary rulings in administrative proceedings and stands by that reasoning. Mem. Op. at 9-14.

Accordingly, the Court finds that Doe has not made the strong showing necessary to establish that she is likely to succeed in her appeal.

### C. Governmental and Public Interests

The Court will address the last two factors together. As noted above, the VA is required by federal regulation to promptly report adverse actions to the NPDB. The agency obviously has an interest in honoring its reporting obligations. The strength of that interest is weakened somewhat here, however, because the VA has voluntarily delayed reporting during the two years this case has been pending. But the government's largesse has not eliminated its reporting obligation now that the Court has upheld the agency's actions. And the risk of an erroneous report is diminished by the outcome of this case in the government's favor.

As for the public interest, Congress has recognized the importance of preventing doctors from moving "without disclosure or discovery of the physician's previous damaging or incompetent performance." 42 U.S.C. § 11101(2). The NPDB meets that need by serving as a source for accountability and oversight in the medical community. About Us, National Practitioner Data Bank (https://www.npdb.hrsa.gov/topNavigation/aboutUs.jsp) (articulating the NPDB's mission to "improve health care quality, protect the public, and reduce health care fraud and abuse in the U.S"). And, again, the risk of an erroneous report is reduced in the case by the process that Doe has been afforded before both the agency and this Court.

Therefore, both governmental and public interests are served by denying a stay.

## II. Dr. Doe's Pseudonym Status

The government separately moves to prevent Dr. Doe from continuing to proceed under a pseudonym. Doe has responded with a motion of her own to maintain that status. Pl's Mot. to Maintain Pseudonym Status, Aug. 25, 2022, ECF No. 67. The Court has previously expressed reservations about Doe litigating this case anonymously. Mem. Op., Sept. 30, 2021, ECF No. 38 at 1 n.1. But proceedings in this Court are now over and jurisdiction over the case lies in the Court of Appeals. So the Court will leave it to the Circuit to determine whether to require Doe to proceed in her true name, based on its particular standards and practices.

While the Court declines to rule on this issue, it offers the following observations. Each year, scores of federal employees like Dr. Doe challenge agency personnel actions before courts across the country. When they do so, the public record reveals what actions were taken and the agency's grounds for them. Those grounds include findings of unprofessionalism, incompetence, misconduct, and worse. The disclosure of that information – which is only a Google search away from anyone interested in finding it – is no doubt harmful in some respects to each plaintiff's professional reputation and future job prospects. But transparency is the norm in judicial proceedings. So it is a price plaintiffs pay for their day in court. These plaintiffs run the occupational gamut, from secretaries and scientists to librarians and lawyers. The Court sees no reason to treat Doe differently just because she is a doctor.

## III. Conclusion

Because all factors weigh against granting the requested stay, it is hereby

**ORDERED** that Plaintiff's [56] Motion to Stay Order Pending Appeal is DENIED; it is further

**ORDERED** that Defendants' [63] Motion to Remove Plaintiff's Pseudonym Status is also DENIED;  it is further

**ORDERED** that Plaintiff's [67] Motion for Order to Maintain Pseudonym Status is also DENIED.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date: August 26, 2022